In re CUMMINS CONST. CORPORATION.

No. 9876.

United States District Court
D. Maryland.

Baltimore Division.

Dec. 3, 1948.

Roszel C. Thomsen, of Baltimore, Md., for Continental Casualty Co.

Charles G. Page and Frederick J. Singley, both of Baltimore, Md., for trustee.

COLEMAN, Chief Judge.

The question for decision is whether the claim of the Continental Casualty Company in the amount of $16,794.56, filed in this bankruptcy proceeding, is to be treated as a preferred claim with respect to funds hereinafter referred to, and paid in full, or whether this claimant is to be treated merely as a general creditor in the bankrupt estate.

The pertinent facts summarized are as follows: The Cummins Construction Corporation, on November 12, 1943, entered into a contract with the United States to do certain construction work for the Chief of the Bureau of Yards and Docks of the Navy Department, at Dahlgren, Virginia. The Cummins Company furnished the usual bonds as required by the Miller Act, 40 U.S.C.A. § 270a, with the Continental Casualty Company as surety, one a performance bond for completion of the work within the specified period, and the other for payment of those furnishing labor and materials. Prior to the execution of these bonds, the Cummins Company, in its formal written application to the surety, had made to the Continental Casualty Company an assignment of any funds due from the Government under the contract whenever that company, as surety, should be compelled by default of the contractor to fulfill its bond obligations.

The work was completed by the Cummins Company, was accepted by the Government on July 20, 1944, and all amounts admitted by the Government to be due were paid except a claim on account of extra work and for rebate of liquidated damages assessed by the Government. This claim having been denied by the Government contracting officer, it was duly appealed to the Navy Board of Contract Appeals, and while still awaiting decision by that Board, the Cummins Company was adjudicated a bankrupt on January 4, 1945. Thereafter, the trustee in bankruptcy for the Cummins Company duly prosecuted this claim against the Government and on September 9, 1946, obtained an award to the bankrupt company in the amount of $46,888. Some time prior thereto, and within the period allowed by the Bankruptcy Act, three unsecured creditors of the bankrupt who, as sub-contractors, had furnished labor and materials to it under the contract and had waived and released all liens or claims to any funds due or to become due from the Government to the Cummins Company under it, filed proof of their claims in the bankruptcy proceeding, aggregating $16,794.56. Thereafter, demand having been made upon the Continental Casualty Company, as surety, for payment of these claims, that company paid them in full, and took releases and assignments from each of these three general creditors of their respective claims as filed in the bankruptcy proceeding. The surety company had knowledge of the bankrupt's insolvent condition as early as December, 1944. In addition to these claims, a number of unsecured claims had been filed in the bankruptcy proceeding by other subcontractors aggregating more than $8,000, but these subcontractors never prosecuted those claims against the surety, with the result that they were never paid by it, and were duly allowed, and still remain as unsecured claims in the bankruptcy proceeding.

As a result of the payment of the three subcontractor claims, the surety claimed that it had an equitable lien upon any funds that might be determined by the Government to be due to the Cummins Company. After the award on September 9, 1946, by the Navy Board of Contract Appeals in favor of the Cummins Company in the amount of $46,888.00, the surety and the trustee in bankruptcy entered into a stipulation whereby this fund should be paid to the trustee in bankruptcy, as was done, with the proviso that in proceedings in the bankruptcy court to determine the rights of the respective parties to this fund, it should be treated as though still remaining in the hands of the Government.

The matter was fully heard by the referee in bankruptcy who allowed the sure-

ty's claim in full on the ground of subrogation to the rights of the United States or the Cummins Corporation, the bankrupt contractor, in the fund, and accordingly ordered it paid out of the fund of $46,888.00 in the hands of the trustee in bankruptcy, but without interest and after deducting costs. The referee made no specific finding as to the surety's right to payment by virtue of the assignment made to it by the Cummins Company of funds due the latter from the Government. The matter is before this Court on the trustee's petition for review of the referee's action.

The trustee asserts separately eleven grounds on which it claims that the action of the referee should be reversed. However, several of these grounds are little more than restatements of some of the other grounds alleged and all of them may be classified under four major headings as follows: First. Subrogation. It is contended that the surety had no equitable lien or right in the fund by subrogation to the rights of the United States because (1) the contract between the United States and the Cummins Corporation, the contractor, contained no provision for same; and (2) the contract had been fully completed; the work had been accepted and all amounts admitted by the Government to be due the Cummins Corporation had been paid, so that the Cummins Corporation was not in default at the time the surety made the payments to the sub-contractors on which it bases its claim to priority. Second. Waiver. It is claimed that the sub-contractors whom the surety paid had, by their sub-contracts with the Cummins Corporation, expressly waived all right to claim any lien or interest in funds due the latter by the United States, and that therefore the surety was barred from making any such claim. Third. Violation of the Bankruptcy Act, 11 U.S.C.A. § 1 et seq. It is claimed that to allow the surety to assert an equitable lien by subrogation to the rights of the United States (1) would constitute a transfer in fraud of creditors of the Cummins Corporation, the bankrupt, and hence would be void as against the trustee in bankruptcy by virtue of Section 70, subs. a, c and e of the Bankruptcy Act, 11 U.S. C.A. § 110, subs. a, c and e; (2) would constitute a voidable preference because not effective as against bona fide creditors at the time of the bankruptcy and because of the surety's knowledge of the Cummins Corporation's insolvency and therefore in violation of Section 60, subs. a, b, of the Bankruptcy Act, 11 U.S.C.A. § 96, subs. a, b; (3) would injure other unsecured creditors who were obligees under the surety's payment bond with rights in the same fund superior to those claimed by the surety, to which the trustee in bankruptcy succeeded, pursuant to Section 70, sub. e, of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. e; and (4) would fail to give effect to the fact that the surety had waived any superior right which it might have had in the fund by paying the sub-contractors after they had proved their unsecured claims in the bankruptcy proceeding, with full knowledge of such proof, and by obtaining a release and assignment to it of these unsecured claims and, therefore, to prefer the surety would be contrary to the provisions of Section 57, subs. a, b and i of the Bankruptcy Act, 11 U.S.C.A. § 93, subs. a, b and i. Fourth. Assignment. The assignment by the Cummins Corporation to the surety was void because contrary to the Assignment of Claims Act, R. S. 3477, 31 U.S.C.A. § 203.

First, on the question of subrogation, it is well settled that a surety, responsible by bond for the physical completion of building contracts, has an equitable lien on funds due the contractor to the extent that such surety has made payments under his bond, and such lien is superior to any lien or right of third party claimants. Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; American Surety Co. v. Sampsell, 327 U.S. 269, 66 S.Ct. 571, 90 L.Ed. 663; Scarsdale National Bank & Trust Co. v. United States Fidelity & Guaranty Co., 264 N.Y. 159, 190 N.E. 330; United States Fidelity & Guaranty Co. v. Triborough Bridge Authority, 297 N.Y. 31, 74 N.E.2d 226. Also, it is equally well settled that this equity in the surety's favor arises by virtue of the surety's bond, at the time the bond is

given, although it does not become enforceable unless and until the surety suffers a loss under the, bond, i.e., makes some payment pursuant to the obligation of the bond. Prairie State Bank v. United States, supra; Scarsdale National Bank & Trust Co. v. United States, supra. Thus it follows that the surety can enforce any right which the one for whom the work is to be performed can enforce, in this case, the United States. This includes the right which the United States had to apply any balance due under the contract to the payment for labor and materials. Article 6(d) of the contract in the present case so provides. Such a provision is for the benefit of the surety as well as for the benefit of the Government. Prairie State Bank v. United States, supra. Thus it is of no consequence that the contract between the United States and the corporate contractor, the Cummins Company, contained no provision for this right of the surety to subrogation; or that the work under the contract had been fully completed, and accepted by the Government. The surety's right is not dependent upon the labor and material men having a lien on the fund in question or upon a right— which they do not possess—to require the Government to apply the fund to the payment of their bills. Though not legally obligated to pay these sub-contractors, the Government had an equitable obligation to see that they were paid. It therefore had the right to retain the fund here in issue as security for their payment, and the surety, when it paid these claims, became subrogated to that right. Henningsen v. United States Fidelity & Guaranty Co., supra; Hardaway v. National Surety Co., 211 U.S. 552, 29 S.Ct. 202, 53 L. Ed. 321; California Bank v. United States Fidelity & Guaranty Co., 9 Cir., 129 F. 2d 751; Hartford Accident & Indemnity Co. v. Coggin, 4 Cir., 78 F.2d 471. Therefore, turning to the second point urged by the trustee in bankruptcy, i.e., that a waiver by laborers and materialmen, such as was given in the present case, of any right to share in the fund withheld by the Government destroys the surety's right with respect to this fund, this point is obviously untenable by reason of what has just been said.

As to the third point urged by the trustee in bankruptcy, namely, that the action of the referee in according priority to the surety is contrary to the Bankruptcy Act, violations of that Act are charged in at least four distinct ways as indicated above in our analysis of the petition for review of the referee's action. However, all of the questions thus raised may be appropriately dealt with as falling under the two following basic contentions: First, that what the referee did was in (technical) fraud of the bankrupt's general creditors and hence void as against its trustee in bankruptcy; and second, that the referee should have held that the surety had waived any rights that it might have had to an equitable lien, by reason of its having paid the sub-contractors after they had proved their claims as unsecured creditors in the bankruptcy proceeding and had obtained a release and assignment of these claims.

■ With respect to the first contention, by Section 70 of the Bankruptcy Act, 11 U.S.C.A. § 110, the position of the trustee in bankruptcy with respect to a right such as the surety is here asserting is no better than that of the bankrupt. In other words, in the present instance the claim of the bankrupt company against the Government passes to the trustee in bankruptcy subject to the surety's equitable rights therein which arose at the time the contract of suretyship became effective. See Prairie State National Bank v. United States, supra; In re L. H. Duncan & Sons, 3 Cir., 127 F.2d 640; Standard Accident Insurance Co. v. Federal National Bank, 112 F.2d 692; Morgenthau v. Fidelity & Deposit Co. of Maryland, 68 App. D.C. 163, 94 F.2d 632; United States Fidelity & Guaranty Co. v. Triborough Bridge Authority, supra.

■ For the purpose of determining the rights of the surety in the present case, this proceeding is to be treated as though it were a separate proceeding, not under the Bankruptcy Act, between the trustee and the surety as an adverse claimant, in the same manner and to the same extent as though the bankruptcy proceeding had not been instituted and the controversy were between the bankrupt and the surety. This is true by virtue of both section 23

of the Bankruptcy Act, 11 U.S.C.A. § 46, and the stipulation filed in the present case, which expressly provides that any rights which the surety may have with respect to the fund in question shall be dealt with as though the fund were still in the hands of the Government.

On behalf of the trustee it is argued that several sub-contractor creditors in addition to the three who have been paid by the surety, who would have been entitled to payment in full by the surety, had they seasonably presented their claims to it, but who are now but general creditors in the bankruptcy estate, should have priority over the surety because the latter should not be allowed to compete with them for payment. However, the surety is here claiming by subrogation to the status of the Government, not by subrogation to the status of the creditors it has paid. In other words, here, contrary to the situation in American Surety Co. v. Sampsell, 327 U.S. 269, 66 S.Ct. 571, 90 L.Ed. 663, upon which the Trustee relies, it is not a question of participation in the general funds of the bankruptcy estate, but rather of the distribution of a particular fund which is more than sufficient to pay the claim of the surety as well as the claims of the other sub-contractors, if such claims are not barred. As the referee very properly says in his conclusions, "It is arguable that the 'moral obligations' of the United States to see that materialmen on its projects are paid (which gives status by subrogation thereto to the surety) applies as vigorously to those barred as to the diligent sub-contractor. Language in the Sampsell opinion lays weight to that contention but the fatal weakness to the trustee's case on the point is the fact that in the Sampsell case the surety *was allowed* to take after those found to be its bond obligees were paid. Here the fund involved is sufficient to pay both. Had, after, the obligees of the surety were paid in the Sampsell case, there remained sufficient funds to pay dividends to the surety it would have received them—to the point of full payment had the estate's funds been sufficient."

Further, as the referee points out, Friedman **v.** Sterling Refrigerator Co., 4 Cir., 104 F.2d 837, is also not controlling of the present situation. There, although the existence of a single creditor having priority over a lienholder under the Bankruptcy Act was declared sufficient to convey title to the bankruptcy trustee, the factual situation was very different. There, no purchaser from or creditor of the bankrupt could at any time have acquired rights in the fund superior to the surety and its bond obligees in the present case because the rights of the latter were created, not by virtue of creditor or purchaser relationship with the bankrupt, but by subrogation to the status and obligations of the United States. Thus, Section 60, sub. a, of the Bankruptcy Act and the reasoning of the Friedman case are, as the referee concluded, not controlling of the issue before us.

We turn next to the second contention made on behalf of the trustee in bankruptcy, namely, that the referee should have held that the surety had waived any rights that it might have had to an equitable lien by reason of the surety's having paid the three sub-contractors after they had proved their claims as unsecured creditors in the bankruptcy proceeding, and had obtained a release and assignment of these claims. But again, with respect to this argument it is sufficient to point out that the surety's right is based upon subrogation to the status of the United States, not upon subrogation to the status of the sub-contractors whose claims it paid. Furthermore, as the referee correctly pointed out parenthetically in his conclusions, this Court has the duty to allow creditors who have unwittingly filed general claims, although entitled to file as preferred claimants, to correct their error. As the referee held, this principle is particularly applicable in the present case, where the right of the main contractor to additional sums under the contract was not established until after its bankruptcy and the lapse of the six months' period provided for the filing of claims.

We turn to the fourth and final major ground upon which the trustee opposes the surety's claims, namely, that the assignment by the Cummins Corporation to the surety was void because contrary to the Assign-

ment of Claims Act, R.S. Sec. 3477, 31 U.S.C.A. § 203.

This assignment, contained in the bankrupt's application to the surety for the bond as collateral to secure the surety's obligations under the bond, embraced all sums that might be due by the Government to the bankrupt at the time of any abandonment, forfeiture or breach of the contract that would give rise to the surety's obligation under its bond, and was "to become effective as of the date of said contract bond." The application of the bankrupt containing this assignment was dated November 15, 1943. No notice of it was delivered to the Government, and no notice of any character was stamped upon the records of the bankrupt company with regard thereto. Also, no attempt was made by the surety to assume dominion or control over the funds falling due from the Government under the contract. The bankrupt collected and used in its business, as it saw fit, all payments made from time to time by the Government on account of the contract during the period between its execution and the bankruptcy of the contractor corporation.

R.S. Sec. 3477, 31 U.S.C.A. § 203, declared null and void all assignments of claims against the Government prior to their allowance. In 1940 this statute was amended to permit assignment to financial institutions for the purpose of aiding contractors in financing national defense contracts. See Coconut Grove Exchange Bank v. New Amsterdam Casualty Co., 5 Cir., 149 F.2d 73. The Supreme Court has held that an attempted assignment by a contractor to a surety, no matter how absolute in its terms, as security for execution of a completion bond, was entirely void as against a contractor's trustee in bankruptcy insofar as it related to a claim against the United States which had not been liquidated. National Bank of Commerce v. Downie, 218 U.S. 345, 31 S.Ct. 89, 54 L.Ed. 1065, 20 Ann.Cas. 1116; Martin v. National Surety Co., 300 U.S. 588, 57 S. Ct. 531, 81 L.Ed. 822. However, as decided in the latter case, such an assignment may enable the surety to prevail over the contractor in a contest between them. There, the contractor, just as in the present case, had assigned to the surety payments due from the Government as security in the event of any breach or default in performance of the contractor's contract with the Government. The Supreme Court held that an equitable lien arose from this assignment in favor of the surety to have the funds received by the contractor from the Government applied to the satisfaction of claims for labor and material, and that this equity was superior to a claim of one who, with notice, had lent money to the contractor and under power of attorney from the contractor, had collected the deferred payments from the Government and applied them to his loan. See also McKenzie v. Irving Trust Co., 323 U.S. 365, 65 S.Ct. 405, 89 L.Ed. 305, which was a proceeding by a trustee in bankruptcy to set aside an alleged preference. The Supreme Court did not in this case, however, adjudicate the claim of a surety adverse and superior to that of the trustee in bankruptcy and other creditors, because the surety was not a party to the suit.

In the present case the referee has made no finding with respect to the effect of the assignment from the bankrupt to the surety. The referee, however, stated, that were it necessary to decide the question, his inclination would be to deny the claim, first, because of the existence of the Assignment of Claims Act which we have just considered, and second, "because of the full 'dominion and control' apparently granted the bankrupt by the surety at all times with respect to payments made by the Government on the contract to secure the performance of which the bond was given."

Because of the fact that we find the surety's claim to priority must be sustained on the ground of subrogation, it becomes unnecessary to determine whether the same result may be reached by virtue of the assignment. However, we agree with the referee that the assignment is void on the second ground which he has suggested and so we need not consider the first; that is to say the assignment is void because the surety never attempted to assert any rights under it. Throughout the period of the contract, the bankrupt remained the undisputed owner of the funds, collected and deposited them to its

own account, and used them for its own purposes without direction or control by the surety. The contract itself, by the provisions of Article VII, contemplated that the bankrupt should have undisputed dominion and control of the funds payable by the Government until default as stipulated in the assignment, and gave the bankrupt authority to assign claims for money due or to become due the contractor from the Government, to any bank, trust company or other financial institution, in conformity with the amendment of 1940 to the Assignment of Claims Act.

Under Maryland law, an assignment is void by which the assignor is left with complete dominion and control over the subject matter of the assignment. See Scott v. Keane, 87 Md. 709, 40 A. 1070, 42 L.R.U. 359; Union Trust Co. of Maryland v. Peck, 4 Cir., 16 F.2d 986. See also Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991; Lone Star Cement Corporation v. Swartwout, 4 Cir., 93 F.2d 767. Therefore, even though the breach of the bond may be treated as having occurred not later than August 1944, that is, when the bankrupt failed to pay Victor A. Pyles Co., Inc. (one of the three sub-contractors whose claims the surety later paid), the balance then due it, which was more than four months prior to the bankruptcy, nevertheless, the assignment would not be valid as against the trustee in bankruptcy because by State law it was in (technical) fraud of the bankrupt's creditors under Section 70, sub. e, 11 U.S.C.A. § 110, sub. e, of the Bankruptcy Act.

Great reliance is placed by the trustee upon United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022, it being contended that whatever may have been the prior state of the law, applicable to a surety having the status of the Continental Casualty Company in the present case, that decision is definitely contra to this surety's contention.

In the Munsey case the Court of Claims, 67 F.Supp. 976, 107 Ct.Cl. 131, had given judgment against the Government, and in favor of the receiver for a contractor for withheld and unappropriated percentages of progress payments on a construction contract under the Miller Act, to be used by the receiver in reimbursing a surety on a payment bond for payments made to laborers and materialmen. The Supreme Court, however, reversed this judgment. The gist of its decision is to be found in the following passages from the opinion of the Court by Mr. Justice Jackson, 332 U.S. 234, at pages 240, 243, 67 S.Ct. at page 1602: "From Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412, to American Surety Company v. Sampsell, 327 U.S. 269, 66 S.Ct. 571, 90 L.Ed. 663, we have recognized the peculiarly equitable claim of those responsible for the physical completion of building contracts to be paid from available moneys ahead of others whose claims come from the advance of money. *But in all those cases, the owner was a mere stakeholder and had no rights of its own to assert.* Respondent tells us that here the United States is in the same position and that is a general creditor, it has no more right to the money which it holds than does any other general creditor of the contractor.

\* \* \* \* \* \*

"It [the surety for whose benefit the receiver sued] argues that the implication of the several contracts among government, contractor and surety was that the moneys earned under the repair contracts would be available to pay claims arising under each job. However, if statute did not require a surety, there could be no question that the government would have the right of set-off. Respondent's contention then comes to this: that by requiring the contractor to furnish assurances that he will perform his obligations to laborers and materialmen, the government has deliberately decreased the ordinary safeguards it would have had to enforce the contractor's obligations to it. We see nothing in the words of the contract or the statute to lead us to this conclusion. On the contrary, *the statutory provisions requiring a separate bond for payment of laborers and materialmen were enacted for their benefit, not to the detriment of the government. It is the surety who is required to take risk. We have no warrant to increase risks of the government.*" (Emphasis supplied.)

We find nothing in this language which is to be taken as changing the prior set-

tled law with respect to the status of a surety under circumstances such as those before us. Indeed, the Court in the Munsey case directly affirms earlier decisions in this respect where, as in the present case, the Government "was a mere stakeholder and had no rights of its own to assert." The factual distinction is very clear. It was recognized in United States Fidelity & Guaranty Co. v. Triborough Bridge Authority, supra, a decision of the Court of Appeals of New York, rendered approximately a year after the decision in the Munsey case. There, a surety, by virtue of its performance bond given to the Bridge Authority, was required to fulfill its bond obligation upon the contractor's default. The New York Court of Appeals held that the Authority's right to funds in its own hands and the surety's right to same by subrogation, to the extent of the amount the surety was compelled to pay under its bond, were superior to the contractor's right to such funds, and superior, likewise, to the right of the United States to which the contractor owed income taxes, since the right of the United States to the funds could be no greater than those of the contractor. After referring to such cases as Scarsdale National Bank & Trust Co. v. United States Fidelity & Guaranty Co. supra; Prairie State Bank v. United States, supra, and American Surety Co. v. Sampsell, supra, as having settled the law to the effect that the surety's rights were prior, the Court said, 74 N.E.2d 226, at pages 227, 228: "The Supreme Court's recent decision in United States v. Munsey Trust Co. [332 U.S. 234], 67 S.Ct. 1599 [91 L.Ed. 2022], decided June 23, 1947, neither reaches nor points a contrary result. There, the Government, itself in possession of the fund, asserted a claim of its own by way of set-off and, to the extent of that set-off, the fund upon which the surety's lien could operate was necessarily reduced. Quite different is such a case from one like the present—as the Supreme Court observed—where 'the owner [defendant Authority herein] was a mere stakeholder and had no rights of its own to assert' United States v. Munsey Trust Co., supra. [67 S.Ct. 1602.]

*　　*　　*　　*　　*　　*

In addition, it is, of course, settled that intervener's [the Government's] rights to the moneys held by defendant Authority can be no greater than those which its taxpayer—the contractor had. * * * Here the contractor's rights to the fund were clearly subordinate to the right of defendant Authority—and, by subrogation, of plaintiff—to withhold and apply those moneys to the payment of unsatisfied claims for labor and materials. So long as such claims were outstanding and unpaid and so long as defendant Authority had the right to withhold and apply, the contractor had no rights to the fund, and, consequently, had no property interest therein upon which intervener could place a lien."

On the same day that the Court of Claims' decided the Munsey case it rendered its decision in Seaboard Surety Co. v. United States, 67 F.Supp. 969, 107 Ct. Cl. 34. There, the decision was against the surety who had paid materialmen after default but before a general assignment by its principal, the contractor. The case turned upon the statutory right of the United States as intervener under the priority statute, R.S. 3466, 31 U.S.C.A. § 191. After reviewing the authorities, the Court of Claims drew a distinction between the rights of the surety as against the United States under its statutory preference, and the equities of the surety as between itself and general creditors, including the Government, in the absence of a general assignment, which brought the priority statute into effect. The opinion is somewhat confusing in its construction and reasoning, and it is unfortunate and indeed strange, that although this case was decided by the Court of Claims on the same day, October 7, 1946, as the Munsey case and both opinions were written by Judge Littleton, neither case makes any reference to the other.

The Supreme Court denied certiorari in the Seaboard case, 330 U.S. 826, 67 S.Ct. 863, 91 L.Ed. 1275, although granting, on the same day, certiorari in the Munsey case, 330 U.S. 814, 67 S.Ct. 863, 91 L.Ed.

1268, and later making no mention of the Seaboard case in its Munsey case opinion. It is also to be noted that in the Triborough case, supra, no mention is made of the Seaboard case. Suffice it to say again with respect to this case that the decision appears to have turned upon a construction of the federal priority statute, and was not intended to be, nor do we find anything in it which is contrary to the construction which we place upon the Supreme Court's opinion in the Munsey case, in relation to the factual situation presented to us in the present proceeding. Accordingly, we agree with the referee in holding that the Munsey case is not to be construed as modifying any of the Supreme Court's prior decisions applicable to the facts before us in the present case. Indeed, we find no ground for intimating, as the referee apparently does in his conclusions of law, that the Munsey case may indicate a trend against stare decisis. California Bank v. United States Fidelity & Guaranty Co., supra, was cited with approval in the Munsey case. If there had been any intention on the part of the Court to overrule its decisions in such cases as Henningsen v. United States Fidelity & Guaranty Co., supra, it is to be assumed they would have been referred to and discussed.

To summarize and conclude: For the reasons herein given, we hold that the referee in bankruptcy was correct in giving priority to the Continental Casualty Company, surety, as against the trustee in bankruptcy, with respect to the fund here in issue, and that therefore the action of the referee must be affirmed.