AMERICAN SURETY COMPANY OF NEW YORK, Appellant,

v.

Oscar HINDS, Trustee, Appellee.

Matter of MILE HIGH PLUMBING & HEATING COMPANY, Bankrupt.

No. 5939.

United States Court of Appeals
Tenth Circuit.

Oct. 11, 1958.

John C. Mott, Denver, Colo. (McComb, Zarlengo & Mott, Denver, Colo., on the brief), for appellant.

John W. Low, Denver, Colo., for appellee.

Before BRATTON, Chief Judge, and HUXMAN and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

By motion filed in the bankruptcy proceedings of the Mile High Plumbing & Heating Company[1] the appellant, American Surety Company of New York,[2] sought an order requiring the Trustee in Bankruptcy to turn over to appellant monies received by the Trustee from the United States for work done by the bankrupt and the Trustee under a contract coming within the purview of the Miller Act, 40 U.S.C.A. §§ 270a–270d. Appellant's motion was denied by the referee and this appeal followed the affirmance of the referee by the District Court for the District of Colorado.

In 1952, the contractor entered into an agreement with the United States to install heating equipment in a federal building project at Denver, Colorado. A payment bond was furnished the United States as required by the Miller Act, written by the appellant surety, the terms of which now premise appellant's claims. In 1953, the contractor was adjudicated a bankrupt. At such time the contractor had completed 94.86% of the agreed work, had earned an unpaid contract credit with the United States in the sum of $10,145.34, but had unpaid labor and material bills in excess of $15,000. As required by the terms of the payment bond, the surety paid all such material and labor bills incurred by the contractor. The project was completed by the Trustee pursuant to an order of the Referee in Bankruptcy at a cost of $994.79 and by so doing the Trustee earned $3,201.54, a sum representing 5.14% of the original contract plus certain extras.

Subsequent to the completion of the work by the Trustee and his request for final payment, the General Accounting Office of the United States certified that the total sum due the Trustee was $13,346.88. In making payment to the Trustee the government deducted a cost item of $10 and as a partial set-off for a government tax claim against the contractor[3] an additional $5,470.98 representing retained percentage earned by the contractor prior to adjudication. The sum now in the possession of the Trustee is $7,875.90. This sum, less the costs incurred by the Trustee in completing the contract, is the amount in dispute.

A single question is thus presented: Did the surety, by reason of its payment of labor and material bills incurred by the contractor prior to its adjudication as a bankrupt, acquire any rights to the net contract funds superior to the rights of the Trustee?

Both the appellant surety and the appellee Trustee recognize that the determinative question cannot be answered except by an interpretation of the holding in United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022. The controversy in Munsey, as here, arose after the surety, pursuant to the obligation of a payment bond furnished under the Miller Act, had paid laborers and materialmen. By so doing the surety asserted equitable rights to the retained contract funds held by the United States and denied the right of the United States to deplete the retained funds by set-off through an obligation of the contractor to the government arising from an entirely independent transaction. The Supreme Court, pointing out that a surety claiming through its princi-

---

[1]. Hereinafter designated as the contractor.

[2]. Hereinafter designated as the surety or appellant.

[3]. The government's accounting is not questioned

pal cannot abrogate the right of a creditor to apply credits in his hands in extinguishment of debts due him, upheld the right of the United States to a set-off. And the present appellant surety would have us limit the holding of Munsey to the narrow scope of its facts and the rule that the right of set-off by the sovereign is superior to the claim of a surety in a direct controversy between the two. Indeed the contention is not unsupported in authority.

Under facts undistinguishable in substance from those here considered the court in In re Cummins Construction Corporation, D.C.Maryland, 81 F.Supp. 193 allowed recovery to the surety and indicated the view that the decision in Munsey was not applicable where the government was not asserting a claim of its own. A similar restriction was placed upon Munsey by the state court interpreting state law in United States Fidelity & Guaranty Co. v. Triborough Bridge Authority, 297 N.Y. 31, 74 N.E.2d 226. See also National Surety Corp. v. United States, 133 F.Supp. 381, 132 Ct.Cl. 724. The recovery allowed the surety in these cases then finds comfort in earlier authority recognizing the equitable claims of sureties to be superior to those whose claims arise from the loan of money to the contractor. Prairie State National Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; Standard Accident Ins. Co. of Detroit, Mich. v. Federal Nat. Bank of Shawnee, Okl., 10 Cir., 112 F.2d 692, and cases cited.

We are not convinced, however, of the merit of reasoning which limits the clear holding of Munsey to factual situations where the government is a direct claimant. Mr. Justice Jackson, speaking for the court, notes that the claim of the surety must fail for *two* reasons, both the strength of the government's right to set-off and the weakness of the surety's claim to equitable rights in the fund.

The reasoning of the opinion in the latter regard is in no way dependent upon the United States being a claimant.

■■■ The rights of a surety are largely derivative in nature. Having paid the laborers and materialmen, appellant may claim subrogation to their rights. But since laborers and materialmen have no enforceable rights against the United States [4] the surety can rise no higher than the basis of the subrogation. The very purpose of the payment bond required under the Miller Act is to shift the ultimate risk of nonpayment from workmen and suppliers to the surety. The United States does not retain funds for that purpose for it is said:

"But although we have assumed, for the purposes of another argument, that assurance that laborers and materialmen will be paid is one of the reasons for retaining the money, it seems more likely that completion of the work on time is the only motive. [Citations] It is hardly reasonable to withhold money in order to assure payments which perhaps can be made only from the money earned. In any event, we are not prepared to apply law relating to security to unappropriated sums which exist only as a claim." United States v. Munsey Trust Co., 332 U.S. at page 243, 67 S.Ct. at page 1603.

■■■ It would seem clear that if the surety can claim no enforceable right of subrogation through the creditors paid and can assert no equitable claim to the fund itself, either in its own right or through the United States,[5] then the Trustee must here prevail and appellant's claims must await their presentation under the administration of the bankruptcy proceedings. The Ninth Circuit has similarly concluded in Phoenix Indemnity Co. v. Earle, 218 F.2d 645.

The judgment is affirmed.

4. United States v. Munsey Trust Co., 332 U.S. at page 241, 67 S.Ct. at page 1602.

5. We are not here required to consider whether a different rule might be applicable were a claim made under a performance bond.