In the Matter of **DUTCHER CONSTRUC-TION CORPORATION, Bankrupt.**

No. 41068.

United States District Court
W. D. New York.

Sept. 12, 1961.

———◆———

Vaughan, Brown, Kelly, Turner & Symons, Buffalo, N. Y. (Mark Turner, Buffalo, N. Y., of counsel), for petitioner Reliance Ins. Co.

Miles, Cochrane & Grosse, Buffalo, N. Y. (Raymond T. Miles, Buffalo, N. Y., of counsel), for trustee in bankruptcy.

HENDERSON, District Judge.

The Reliance Insurance Company has petitioned for the review of a decision of the Referee in Bankruptcy relegating it to the position of a general creditor on claims for losses incurred under a payment bond given pursuant to the Miller Act, 49 Stat. 793 (1935), 40 U.S.C.A. § 270a (1958).

The Miller Act is the most recent of a series of acts designed to protect laborers and materialmen working on government projects by requiring general contractors for the government to provide a surety bond guaranteeing payment of wages and material bills. Unlike the former legislation in the field,[1] the Miller Act separates the obligation of the general contractor to its laborers and materialmen from its obligation to the United States for the completion of the contract, accomplishing this by requiring two bonds—each designed to guarantee the respective obligation covered—in place of the single, combination performance and payment bond previously required. This change enhanced the bond protection of the laborers and materialmen by shortening the time within which they had to wait before suing on the bond and by divorcing the laborers' or materialmen's claim against a surety from any change of consequences attendant upon the contractor's performance or non-performance of the construction contract itself.[2]

The surety in the case at bar rests its claim for priority upon a number of federal court cases[3] beginning with Hen-

1. The Heard Act, August 13, 1894, ch. 280, 28 Stat. 278, as amended by Act of February 24, 1905, ch. 778, 33 Stat. 811.

2. The legislation preceding the Miller Act required the unpaid laborer or materialmen to wait until six months after the government had accepted the completed project, regardless when, during construction, the labor had been performed or the material provided. If at any time prior to this, the United States sued on the surety bond for default in performance of the contract by the contractor, the unpaid laborer or materialman could intervene in the action for the purpose of obtaining relief, but relief on his claim was postponed to that of the United States, and would be nonexistent if the claim of the United States was greater than the total amount of the bond.

3. See, e. g., In re Scofield Co., 2 Cir., 1914, 215 F. 45; In re P. McGarry & Son., 7

ningsen v. United States Fidelity and Guaranty Company, 1908, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547, which recognized the right of a surety which had paid labor or material bills pursuant to its surety obligation to obtain recovery against any funds otherwise owing to the contractor by the government, but remaining in the hands of the government. Each of these cases, although arising under the earlier legislation, involved situations like that at bar, where the payments made by the surety satisfied the contractor's default in paying labor and material bills and were not incurred by a default in completing the contract. Then, as now, the issue was whether, in providing the bond requirement in the statute, Congress intended to substitute the laborers' action upon the bond for any and all right against the United States or, on the other hand, intended merely to provide "an additional protection, which would become the ordinary and primary one, and usually would be sufficient, and to do this without diminishing the obligation of the government to see that these claims were paid, as far as that result could be accomplished by the funds which it retained." Belknap Hardware & Manufacturing Company v. Ohio River Contracting Company, 6 Cir., 1921, 271 F. 144, 148. If the equitable right of the laborers and materialmen to look to the fund in the government's hands remained (in addition to the action upon the bond), the surety paying the laborers and materialmen could recover.

The answer of the courts before the enactment of the Miller Act was in favor of the surety. Whether that result has been changed by either the enactment of the Miller Act itself or by the effect of United States v. Munsey Trust Company, 1947; 332 U.S. 234, 67 S.Ct. 1599, 91 L. Ed. 2022 is the determinative issue in this case.

The enactment of the Miller Act would not seem to have affected the holding of the prior federal cases. Examination of the provisions of the legislation and of the discussions which took place on the floor of Congress when the Miller Act was passed [4] indicates that the purpose of Congress at that time was to remove certain loopholes in the bond protection previously accorded to laborers and materialmen—not to alter the fundamental rights and duties as between sureties, laborers and materialmen, and the government. Under the new legislation, laborers and materialmen could sue a surety upon a payment bond after waiting only ninety days after the labor was performed or the material furnished [40 U.S.C.A. § 270b], rather than being required to wait until six months after the entire project had been completed and accepted by the government. Moreover, under the new arrangement, satisfaction of the laborers and materialmen under the bond was not conditioned, as before, upon the prior satisfaction—perhaps by exhaustion of the penal sum of the bond itself—of the government for any default in performance of the contract. I conclude that the precedents antedating the Miller Act are as appropriate now, as before, unless, as the Referee held and as the Trustee now urges, the effect of the Munsey decision was to overrule the Henningsen line of authority.

While some cases support the Referee's decision on this point [5], there is al-

Cir., 1917, 240 F. 400; Belknap Hardware & Manufacturing Co. v. Ohio River Contracting Co., 6 Cir., 1921, 271 F. 144.

4. 79 Cong.Rec. 11702 (1935) (remarks of Representative Miller) ; 79 Cong.Rec. 13382 (1935) (remarks of Senators Burke, Walsh and McCarran).

5. American Surety Co. v. Hinds, 10 Cir., 1958, 260 F.2d 366; Phoenix Indemnity

Co. v. Earle, 9 Cir., 1955, 218 F.2d 645; Fidelity & Deposit Co. v. N. Y. Housing Authority, D.C.S.D.N.Y.1956, 140 F. Supp. 298, reversed on other grounds, 2 Cir., 1957, 241 F.2d 142. Compare State Bank of Albany v. Dan-Bar Contracting Co., Inc., 1960, 23 Misc.2d 487, 199 N.Y. S.2d 309, affirmed 3d Dept.1961, 12 A.D. 2d 416, 212 N.Y.S.2d 386.

so considerable authority to the contrary.[6] In Munsey, the Supreme Court was confronted with a claim by a surety against funds held by the government which would have been due to the contractor, but for a set-off claimed by the government against the contractor. The United States was not in that case a mere stakeholder with no interest of its own to press, as it was in the Henningsen case and also here until it paid the sum to the trustee in bankruptcy. The holding in Munsey—that the government's claim to set-off was superior to the claim of a surety—does not require a conclusion that where the United States has no set-off claim, the surety has no superior rights to the funds over general creditors. Indeed, such an extension of the Munsey decision would unwarrantably increase risk to the surety, whose guarantee has played a direct part in the production of the bankrupt's income here at issue and would further increase expense to the government through increased bond premiums passed on by the contractor as a cost of doing business. It seems sufficient to note that at no point in the Munsey decision did the Court mention Henningsen or the line of decisions which follow it. Had the Court intended by its language in Munsey to discard this prior authority, it is at least reasonable to assume that some discussion on the point would have been had.

The Referee's decision is set aside and his order of January 9, 1961, is vacated. The application of the Reliance Insurance Company for an order directing the trustee to pay to it the specific sum of $87,-737.35, the proceeds received from the United States Engineers, as a priority claim is granted.

So ordered.

6. In re Cummins Construction Company, D.C.Md.1948, 81 F.Supp. 193; United States Fidelity and Guaranty Company v. Triborough Bridge Authority, 1947, 297 N.Y. 31, 74 N.E.2d 226; Royal Indemnity Company v. United States, 1950, 93 F.Supp. 891, 117 Ct.Cl. 736; Hadden v. United States, 1955, 132 F.Supp. 202, 132 Ct.Cl. 529; National Surety Corporation v. United States, 1955, 133 F. Supp. 381, 132 Ct.Cl. 724, certiorari denied, 1955, 350 U.S. 902, 76 S.Ct. 181, 100 L.Ed. 793; Continental Casualty Company v. United States, Ct.Cl.1959, 169 F.Supp. 945; Newark Insurance Company v. United States, Ct.Cl.1959, 169 F. Supp. 955; Bank of Arizona v. National Surety Corporation, 9 Cir., 1956, 237 F.2d 90, 93 (dictum).