In the Matter of **DUTCHER CONSTRUC-TION CORPORATION, Bankrupt.**
No. 197, Docket 27246.

United States Court of Appeals
Second Circuit.

Argued Jan. 19, 1962.

Decided Feb. 6, 1962.

Raymond T. Miles, Buffalo, N. Y., for appellant, Chester A. Pearlman, Trustee

in Bankruptcy of Dutcher Construction Corporation.

Mark N. Turner, Buffalo, N. Y. (Vaughan, Brown, Kelly, Turner & Symons, Buffalo, N. Y., on the brief), for respondent, Reliance Ins. Co.

John G. Street, Jr., Fort Worth, Tex., amicus curiæ supporting the contentions of appellant.

Thomas W. Murphy, Phoenix, Ariz. (Murphy & Mirkin, Phoenix, Ariz.), amicus curiæ supporting the contentions of appellant.

Before MEDINA, MOORE and SMITH, Circuit Judges.

MEDINA, Circuit Judge.

The trustee in bankruptcy of Dutcher Construction Corporation appeals from an order of Judge Henderson, reversing the Referee and holding that petitioner-appellee Reliance Insurance Company (formerly named Fire Association of Philadelphia) was entitled to a fund of $87,737.35 previously paid by the Government to the trustee. Opinion below reported at 197 F.Supp. 441.

The case is interesting and important, as it involves the controversial question of whether a surety, having paid materialmen and laborers pursuant to the terms of a payment bond, but not having completed performance of work required by the prime contract with the Government, is entitled by way of subrogation to the fund paid to the trustee in bankruptcy by the Government for the work done by the contractor prior to the termination of the contract. We think the legal principles formulated by the courts on this subject under the Heard Act, 28 Stat. 278 (1894), amended 33 Stat. 811 (1905), were not affected or altered by the Miller Act, 49 Stat. 793 (1935), 40 U.S.C.A. § 270a, which superseded the Heard Act. With all due respect to our brothers of the 9th and 10th Circuits, we believe they have misconstrued the Supreme Court decision in United States v. Munsey Trust Company, 1947, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022, and we disagree with the decisions in those Cir-

cuits holding the surety not entitled to subrogation. Phoenix Indemnity Co. v. Earle, 9 Cir., 1955, 218 F.2d 645; American Surety Co. of New York v. Hinds, 10 Cir., 1958, 260 F.2d 366.

The facts are stipulated. In April of 1955 Dutcher contracted with the United States to perform work on the Saint Lawrence Seaway project. Prior to awarding the contract, the Government required Dutcher to supply the customary surety bonds, a performance bond and a payment bond. This was done pursuant to the Miller Act, 40 U.S.C.A. § 270a, which provides:

"Before any contract, exceeding $2,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person, who is hereinafter designated as 'contractor':

"(1) A performance bond with a surety or sureties satisfactory to the officer awarding such contract, and in such amount as he shall deem adequate, for the protection of the United States.

"(2) A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person."

Reliance is the surety on these bonds.

On April 11, 1956 the Government, with the consent of Dutcher, terminated the contract. During the preceding year Dutcher incurred obligations to pay for labor and materials in the performance of the contract. Dutcher did not meet these obligations. The surety did pay them, in the amount of $326,248.42, for labor and materials, and additional sums for expenses, and in satisfaction of a judgment against the surety for tires furnished for use on the job, amounting in all to $349,-172.81. These bills were paid by the surety in the Spring and Summer of 1956. At the end of August, 1956 Dutcher was adjudicated bankrupt.

Prior to the termination of the contract, Dutcher had earned, after Government deductions, $127,737.35 for the work done up to that time, and this represented the labor and materials that had gone into the job. This sum, owing to Dutcher, was reduced by $40,000, the cost to the Government of completing the job. This consisted of the proper shaping and dressing of the spoil area. The balance, $87,737.35, was paid by the Government to appellant, as Trustee for Dutcher. The surety petitioned for an order in bankruptcy directing the transfer of this fund to the surety. The Referee, relying upon Munsey and the Hinds decision by the 10th Circuit denied the petition, and Judge Henderson reversed the Referee and held the surety entitled to the fund by subrogation. We affirm.

All parties agree that the surety is subrogated to the rights of the laborers and materialmen. What this entitles the surety to is hornbook law and is set forth in Osborne, Suretyship (1955) at page 20, "It * * * entitles the surety to enjoy any priority that the creditor enjoyed." See also Restatement, Security § 141, comment c. (1941). Thus, the only question in this case, and the decisive one, is —were the laborers and materialmen entitled to a priority in the $87,737.35?

### Under the Heard Act

The Heard Act required a contractor entering on the construction of any public work for the United States to "execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract." 33 Stat. 812 (1905). In Henningsen v. U. S. Fidelity & Guaranty Co., 1907, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547, the surety which had paid materialmen and laborers upon the contractor's failure to do so,

claimed a fund due from the Government as against a creditor of the contractor who held an assignment. It was argued by the creditor that the surety had no right prior to the assignment as the materialmen and the laborers had no lien on the Government property under construction, as the contractor and not the surety had completed performance under the contract, and as the materialmen and the laborers never had any right to the fund. In rejecting these contentions the Supreme Court held, 208 U.S. at page 410, 28 S.Ct. at page 391:

> "It [the surety] paid the laborers and materialmen, and thus released the contractor from his obligations to them, and to the same extent released the government from all equitable obligations to see that the laborers and supply men were paid. It did this not as a volunteer, but by reason of contract obligations entered into before the commencement of the work."

This would seem to be plain enough. But Henningsen was commented upon in Belknap Hardware & Mfg. Co. v. Ohio River Contract Co., 6 Cir., 1921, 271 F. 144, and the priority of materialmen and laborers spelled out in no uncertain terms, at pp. 148–149:

> "In that case [Henningsen], the surety upon a bond of this kind [a payment bond], given pursuant to the 1894 statute, and who had been compelled to pay its surety obligation, was held entitled to priority in the retained fund as against a general creditor of the contractor. * * * The surety's claim of priority in the fund was sustained, and this was done on the stated theory of subrogation. Since there cannot be the transfer of a right by subrogation, unless there is a right to be transferred, we think the necessary effect of the decision is to hold that the laborers and materialmen, in spite of or in addition to the giving of the bond, had an original and continuing equitable priority in the fund, and

> that it was this right to which the surety was subrogated."

### The Miller Act

It is common knowledge that difficulties and inconveniences arose in the application of the Heard Act. For example, the unpaid materialmen and laborers had to wait until six months after the completion and final settlement of the contract before they could proceed against the surety. If the Government instituted suit earlier, the laborers and materialmen could intervene, but shared only in the balance, if any, of the surety's liability remaining after the amount due the Government was paid in full. The legislative history of the Miller Act indicates clearly that the separate performance and payment bonds in their present form were substituted for the old law for the further protection of materialmen and laborers. See 79 Cong. Rec. 11702 (1935) (remarks of Representative Miller); 79 Cong.Rec. 13382 (1935) (remarks of Senators Burke, Walsh and McCarran). There is nothing to indicate that the priorities of the materialmen and laborers were intended to be eliminated, or affected in any way by the new provisions of the Miller Act. Under the Heard Act, and under the Miller Act as well, the security for the materialmen and laborers was to stand in place of a lien on the property under construction, as no lien attaches to Government property. The purpose under each of these Acts was the same, to encourage laborers and those furnishing materials to undertake the construction of the Government facility, and to make sure that those who did so and created the product under construction should be secured out of the job itself rather than on the general credit of the prime contractor.

It follows we think that the same priorities held to exist under the Heard Act continue to exist under the Miller Act. If the Government was under "equitable obligations to see that the laborers and supply men were paid" (208 U.S. at page 410, 28 S.Ct. at page 391, 52 L.Ed. 547), this would seem sufficient to support the claim of the surety for priority, and such

"equitable obligations" surely are not less under the Miller Act than they were under the Heard Act. In this context we think it quite immaterial that, after the termination of the contract, the little that remained to be done to complete the job was not done by the surety.

United States v. Munsey, 1947, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022.

The decisions of the 9th and 10th Circuits in Phoenix and Hinds above referred to are based squarely on the premise that the Supreme Court in Munsey had sustained the Government's claim to a set-off partly because of "the weakness of the surety's claim to equitable rights in the fund." See Hinds, 260 F.2d at page 368. Perhaps this impression stems from the following dictum in Munsey, 332 U.S. at page 242, 67 S.Ct. at page 1603:

"We need not decide whether laborers and materialmen would have any claim to the retained percentages if both contractor and surety failed to pay them. Even if they do, certainly those would be rights to which the surety could not be subrogated for by hypothesis it would have done nothing to earn subrogation."

In any event, we think the quotations from Munsey in the opinions in Phoenix and Hinds have been misconstrued. If the Supreme Court intended to make any comment with respect to the situation now before us, it was merely to say they held the point open for decision in the future. Of course, if the surety failed to pay materialmen and laborers, the surety "would have done nothing to earn subrogation." Moreover, the fact that "laborers and materialmen have no enforceable rights against the United States," 260 F.2d at page 368, is beside the point. The question is not whether the laborers and materialmen have rights enforceable against the Government, but whether they have an equitable priority in the retained payments.

In National Surety Corporation v. United States, Ct. Claims, 1955, 133 F.Supp. 381, 132 Ct.Cl. 724, cert. denied sub nom.

First National Bank in Houston v. United States, 1955, 350 U.S. 902, 76 S.Ct. 181, 100 L.Ed. 793, the Court said at page 384:

"[T]he laborers and materialmen have the equitable right to assert a claim to moneys in the hands of the defendant [the United States] which are due the contractor. When the surety pays the laborers and materialmen, it becomes subrogated to their right to assert an equitable claim to the moneys in the hands of the defendant. It has frequently been held that they have equitable priority to these moneys over the general creditors of the contractor and over his assignees. [Numerous citations omitted.]

\* \* \* \* \* \*

"In United States v. Munsey Trust Co., supra, the Supreme Court said that the United States was not legally liable to laborers and materialmen, but it did not say that laborers and materialmen could not assert an equitable claim to moneys in the hands of the United States payable under the contract. We think they can. To permit them to do so in no way interferes with the full exercise of the sovereign powers of the United States. It does not subject the defendant to liability beyond the amount it has in its hands confessedly due and owing to somebody."

Royal Indemnity Co. v. United States, Ct. Claims, 1950, 93 F.Supp. 891, 117 Ct. Cl. 736, is to the same effect.

The principle established by Munsey was that the Government's right to a set-off based on sums due from the contractor on other jobs was superior to any claim of the surety by way of subrogation. Furthermore, there is language in Munsey that justifies, if not compels, it to be limited to situations in which the United States is asserting a claim of its own to the retained funds. There are cases that have so held. E. g. Royal Indemnity Co. v. United States, supra; United States Fidelity & Guaranty Co. v. Triborough Bridge Authority, 1947, 297 N.Y. 31, 74

N.E.2d 226, and cases cited in Hinds, 260 F.2d at 368.

It is inconceivable to us that the Supreme Court intended in Munsey to overrule *sub silentio* the rules of priority and subrogation that, as we have already pointed out, were so well established under the Heard Act. Certainly, there is not the slightest intimation that anything in the Miller Act was intended to change priorities existing under the prior legislation. See United States for the Use and Benefit of Bryant Electric Co., Ltd. v. Aetna Casualty & Surety Co., 2 Cir., decided January 11, 1962, 297 F.2d 655. Accordingly, we disagree with Phoenix and Hinds.

We hold the surety entitled to the fund by subrogation; and the order appealed from is affirmed.