In the Matter of BESSEMER MATERIALS, INC., Bankrupt.

No. 63255.

United States District Court
N. D. Alabama, S. D.
Nov. 22, 1963.

Frank Marsh, Bessemer, Ala., for bankrupt.

Ling & Bains, Bessemer, Ala., for receiver.

Leader, Tenenbaum, Perrine & Swedlaw, Birmingham, Ala., Ling & Bains, Bessemer, Ala., for trustee.

Ralph B. Tate, Spain, Gillon and Young, Birmingham, Ala., for United States Fidelity and Guaranty Company.

Kenneth Perrine Leader, Tenenbaum, Perrine & Swedlaw, Birmingham, Ala., for H. L. Coble Construction Company.

Macon L. Weaver, U. S. Atty. N. D. Ala., Birmingham, Ala., for District Director of Internal Revenue.

ALLGOOD, District Judge.

This matter is before the court for decision on a Petition for Review filed on July 3, 1963, by George D. Patterson as District Director of Internal Revenue, said Petition for Review requesting reversal of order of the Referee herein dated April 26, 1963.

The bankrupt herein was a subcontractor under five contracts in which the H. L. Coble Construction Company (hereinafter referred to as "Coble") was the prime contractor. The bankrupt, being in failing condition for a number of weeks prior to the filing of the bankruptcy petition herein, had arrived during the month of September, 1960 at a point where it failed to pay wages due its employees. While prior to September of 1960 the prime contractor had on occasions advanced money to the bankrupt to meet certain payrolls for weeks beginning as early as April 1960; on September 2, 1960, September 3, 1960 and September 6, 1960, Coble paid directly to the employees of the bankrupt, for wages earned during the preceding several weeks, the sum of $20,081.98. On one of the five contracts, United States Fidelity and Guaranty Company (hereinafter referred to as "USF&G"), as surety on that contract, on September 9, 1960 paid a total sum of $7,434.88 directly to the individual employees of the bankrupt for currently due wages. The bankruptcy petition in this case was filed on September 27, 1960.

Coble and USF&G filed their proofs of claims in these proceedings, claiming priority for wages under § 64, sub. a(2) of the Bankruptcy Act, on the basis that their claims, by virtue of subrogation, retained the nature of claims for wages as provided in that section. This claim for priority was made both as to certain advances made to the bankrupt before September, 1960, as well as to the payments by the claimants made directly to the employees of the bankrupt. The District Director of Internal Revenue filed its proof of claim, claiming its priority for taxes under § 64, sub. a(4) of the Bankruptcy Act. After proceedings and hearing, in which the District Director of Internal Revenue objected to the assignment of priority to any part of the claims of Coble and USF&G, the Referee entered an order on April 26, 1963, allowing the claim of Coble as a prior wage claim in the sum of $20,081.98 and the claim of USF&G as a prior wage claim

in the sum of $7,434.88 under the provisions of § 64, sub. a(2), as contended by the two claimants, these being for the wages paid by the claimants, but not including advances paid to the bankrupt. A portion of the Government's tax claim was allowed as an administration expense. After payment of all administration expenses and secured claims, the total funds in the bankrupt's estate will be less than sufficient to pay the allowed priority claims of USF&G and Coble and no portion will remain to be paid to any claimant with a lesser priority (such as the Director's tax priority). It is from this order of the Referee that the District Director of Internal Revenue has filed his Petition for Review and the Referee has certified this review to this court for decision. The matter has been submitted upon briefs.

The contention of the United States is * that § 57, sub. i of the Bankruptcy Act makes provision for the filing of a proof of claim by an individual who has undertaken to secure a creditor in the name of that creditor and that such a claimant shall be subrogated to the rights of the creditor. It is the contention of the Government that § 57, sub. i applies only to those subrogees who have not paid money to a creditor prior to the filing of the bankruptcy petition but have paid it, or are liable for the payment of same, *after* the filing of said petition. The Government further reasons that since Coble and USF&G in this case have made their payments of wages due by the bankrupt prior to the filing of the petition their right of subrogation arose prior to the bankruptcy and the nature of their claims as wage claims did not exist at the time of the filing of the petition in bankruptcy and, therefore, their claims should be classified as general unsecured claims against the bankrupt's estate rather than wage-priority claims. The sole case cited by the Government in support of this position appears to be the case of In re Friedlin, 21 F.Supp. 542 (S.D.N.Y.), which held that where a surety has paid, prior to the filing of a petition in bankruptcy, a statutory penalty for the bankrupt's violation of a state law, the claim filed by the surety should not be disallowed as taking the nature of a penalty (and therefore not being a provable claim). The Government recognizes that there are authorities which hold that the surety is entitled to the status of its principal creditor whether or not it has paid the principal creditor before or after the filing of the petition in bankruptcy, citing Allen v. See, 196 F.2d 608 (C.A.10, 1952), but the United States suggests that these decisions are not correct or applicable to this case.

The Referee relies largely on the case of Pearlman v. Reliance Insurance Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190, which held that a surety who had paid certain priority claims was entitled to a retainage fund on a contract with the United States as against the Trustee in Bankruptcy. The Government contends that this case may be distinguished because it related not to a question of priorities within the bankruptcy court but related to a property interest in the fund retained by the United States under the contract.

Careful reading by this court of § 57, sub. i of the Bankruptcy Act leads us to conclude that this section does not provide an *exclusive* circumstance in which a subrogee may succeed to the priority rights of a creditor of the bankrupt whom it reimburses. It seems apparent that § 57, sub. i was written for the primary purpose of providing a procedure for the situation where there is a creditor of the bankrupt who has a right against a surety at the time of the filing of a petition of bankruptcy but which right has not been exercised in whole at the time of the filing of the petition in bankruptcy. This procedure would protect the bankrupt estate against dual claims by both the creditor and the surety and prescribe an orderly procedure whereby what is in fact one claim can be administered as such, allowing a way for the surety to protect itself in the bankruptcy estate. Fidelity & Deposit Co. of Md. v. Fitzgerald, 272 F.2d 121 (C.A.10, 1959). Where the original

creditor of a bankrupt had already been paid in full by a surety before the filing of the bankruptcy petition, there would be no need for the provisions of § 57, sub. i, because the original creditor already having been satisfied in full by the surety, there would be no cause for such original creditor to file a proof of claim in the bankruptcy estate and nothing to prevent a surety from filing for the entire claim. This, however, would appear to be no reason whatsoever to modify or change the subrogation rights of a surety who had met his obligation before bankruptcy rather than after bankruptcy, and we see no provision of § 57, sub. i which in any way states that this negative result is required. The parties have cited the comments contained in 3 Collier on Bankruptcy (14th Ed.), § 57.-21(2), pp. 337–339, which reads as follows:

"Section 57 [sub.] i makes it clear that a secondary debtor who discharged the principal debt in full is subrogated to the rights of the creditor. But if the discharge of the debt takes place prior to the filing of a petition in bankruptcy against the principal debtor it would appear that § 57 [sub.] i is inapplicable. As a rule the rights of creditors relate to the date of the filing of the petition. If the debt has been fully discharged by the surety prior to the filing date, the original creditor is eliminated and, through subrogation outside of bankruptcy law, replaced by the surety. The latter is the only person able to qualify as a creditor on the filing date. The original creditor would not be entitled to prove a claim even if he wished to do so. Since § 57 [sub.] i only deals with the rights of a surety where there is a principal debtor who for some reason failed to prove the claim, it cannot very well be said to apply to a situation where there is no creditor, other than the surety himself, entitled to the claim and to its proof. A surety who has satisfied the creditor prior to the filing date in his principal's bankruptcy therefore proves his own claim, not that of the original creditor, and § 57 [sub.] i does not apply.

"If the surety discharges the debt after commencement of the bankruptcy proceedings against his principal, § 57 [sub.] i applies. The surety then may prove. Yet he proves not his own claim, but that of the original creditor as of the date of the filing of the petition in bankruptcy, and if the original creditor proved the claim there is no right in the surety to do the same. He has a right to prove only in the creditor's name and only in case the creditor has failed to do so. But there is probably no objection to the surety's calling the bankruptcy court's attention to the fact that he discharged the claim in full and has thereby been subrogated to the original creditor, if the latter omits this statement in his proof of claim."

We think that the United States gains no comfort from this comment. The fact that

"A surety who has satisfied the creditor prior to the filing date in his principal's bankruptcy therefore proves his own claim, not that of the original creditor, and § 57 [sub.] i does not apply"

does not to us indicate a conclusion that a surety in this situation is not subrogated to the priority rights of the creditor satisfied by it, merely because it may prove the claim in its own name. A basic principle in bankruptcy law is that in the absence of provisions of the Bankruptcy Act to the contrary, ordinary commercial law is to be followed as much as possible; the normal position of parties in commercial transactions should be varied no more than required by the express provisions of the bankruptcy statute. The very nature of subrogation is such that the subrogee stands in the shoes of the creditor whom it pays. Contract prices and surety premium rates are regulated in the overall scheme of the

business world to reflect this valuable right of parties assuming secondary liabilities. In the present case, since the creditors paid by Coble and USF&G were wage earners within the provisions of § 64, sub. a(2) of the Bankruptcy Act, we see nothing in the Bankruptcy Act or elsewhere that detracts from the normal subrogation of Coble and USF&G to the priority rights of the wage earners they paid. This survival of priority or security rights upon subrogation is amply supported by a number of precedents: Columbia Tobacco Co. (Rosen v. United States F. & G. Co.), 121 F.2d 641 (C.A.2, 1941) (tax priority); Allen v. See, supra (chattel mortgage security); Pearlman v. Reliance Insurance So., supra (wage priority); Pacific Indemnity Co. v. Grand Ave. State Bank of Dallas, 223 F.2d 513 (C.A.5, 1955) (assignment of contract payment); In re Dutcher Construction Corp., 298 F.2d 655, (C.A.2, 1962) (Heard Act priority to laborers); Shropshire, Woodliff and Co. v. Bush, 204 U.S. 186, 27 S.Ct. 178, 51 L.Ed. 436 (1907) (wage priority in bankruptcy).

 In the last case cited, the Supreme Court said, referring to the wage priority, that "the priority is attached to the debt and not to the person of the creditor; to the claim and not to the claimant". The Government concedes that it has been uniformly held that where a wage claim is paid by a third party and expressly assigned in writing to the third party that the priority attaches to the assigned claim. Cf. 3 Collier on Bankruptcy (14th Ed.) § 64.205, p. 2124, and cases there cited. It would seem that inasmuch as the Supreme Court holds that the priority attaches to the claim rather than to the person of the original creditor, those cases holding that an assigned claim retains its priority would be excellent authority that a claim acquired by right of subrogation would likewise retain its priority. Since it is the nature of the claim acquired and not the claimant which is the pertinent inquiry under the priority provision of the Bankruptcy Act, it would seem to be irrelevant whether the claim

were acquired by written assignment or subrogation, which latter is merely a form of assignment by operation of law.

It is therefore our conclusion that the Referee was correct in his order of April 26, 1963, granting the priority of § 64, sub. a(2) to the claims of Coble and USF&G to the extent provided for in that order. The prayer of the Petition for Review is therefore hereby overruled and denied and this case is remanded to the Referee in Bankruptcy to whom the case has been referred for further proceedings in accordance with this opinion and order.