In the Matter of **ARMSTRONG GLASS COMPANY, INC.,** Bankrupt.

Gladstone H. **WHITE,** Trustee, etc., Petitioner-Appellant,

v.

Edwin M. **LUEDEKA** et al., Respondents-Appellees.

No. 73–1875.

United States Court of Appeals, Sixth Circuit.

Aug. 29, 1974.

160

Ferdinand Powell, Jr., Johnson City, Tenn., for petitioner-appellant.

Edward L. Summers, Knoxville, Tenn., for respondents-appellees; Stone & Bozeman, Knoxville, Tenn., on briefs.

Before PHILLIPS, Chief Judge, Mc-CREE, Circuit Judge, and ROSEN-STEIN,* Senior Judge.

McCREE, Circuit Judge.

This is an appeal by the trustee in bankruptcy from the district court's order affirming the order of the referee in bankruptcy determining that appellees' claims for legal and accounting services rendered before bankruptcy at the request of an equity receiver and asserted against the estate in a superseding bankruptcy administration had priority as "expenses of administration" under Section 64(a)(1) of the Bankruptcy Act, 11 U.S.C. § 104(a)(1). We must decide whether the district court exceeded its authority in appointing the equity receiver; whether the bankruptcy court erred in granting the claims priority as "administrative expenses;" and whether the bankrupt corporation was deprived of due process of law in the determination of the precedence to be accorded the claims. We hold that the district court had authority to appoint the equity receiver and did not abuse its dis-

---

* The Honorable Samuel M. Rosenstein, Senior Judge, United States Customs Court, sitting by designation.

cretion in so doing. We determine that because the claims for legal and accounting services were not incurred "subsequent to filing the petition," they are not "expenses of administration" within the meaning of Section 64(a)(1); but to the extent that the services benefited the estate, the claims were entitled to receive, through an equitable lien, a "preferential" status, Randolph v. Scruggs, 190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165 (1933), at least equivalent to the priority given administrative expenses of the bankruptcy proceeding under Section 64(a)(1), 11 U.S.C. § 104(a)(1). We also hold that the bankrupt corporation was not denied due process of law in the determination of the status of appellees' claims.

The significant facts as related in the referee's memorandum are not disputed. Armstrong Glass Company, Inc., now the bankrupt, and its shareholders sued TTC Industries, Inc. and certain individuals in the Tennessee Chancery Court to rescind an agreement to sell all the Armstrong stock to defendants. The defendants removed the suit to the United States District Court for the Eastern District of Tennessee, where jurisdiction was based on diversity of citizenship. Charges and countercharges in the pleadings indicated that the assets of Armstrong were in danger of becoming dissipated. To protect the interests of the parties and of the town of Erwin, Tennessee, which had issued almost one-half million dollars in bonds for the construction of a manufacturing plant for Armstrong, the district court, by Order on November 18, 1969, appointed an equity receiver to protect and preserve Armstrong's property. The receiver was specifically authorized to employ agents and employees "necessary or desirable for the continued operation of the business." In the same order, the district court dismissed Armstrong as a party in the action for rescission, determining that the corporation was not a "real party in interest." Fed.R.Civ.P. 17(a).

Subsequently, the receiver employed appellee Siegel to perform accounting services for the corporation and appellee Luedeka to represent the corporation in a pending civil action. The receiver was discharged on March 18, 1970. Thereafter, appellees attempted to intervene in the rescission action to assert their claims for services. Siegel claimed $5,404.87 and Luedeka claimed $4,073.97 for services rendered before the equity receiver's discharge. Also, Luedeka claimed another $1,528.08 for legal services performed for the corporation after the receiver's discharge. On December 9, 1970, the district court denied appellees intervention, but held that the claims were subject to the court's general equity powers and directed Siegel and Luedeka to file with the court their claims against the former receiver.

About one month earlier, on November 5, 1970, Armstrong had filed, in the United States District Court for the Eastern District of New York, a petition for an arrangement under Chapter XI, of the Bankruptcy Act. On motion of certain creditors, the case was transferred to the Eastern District of Tennessee, where the rescission action was pending. However, the plan of arrangement was not filed, and as the referee's memorandum recites, on March 9, 1971, the bankruptcy court entered an adjudication in bankruptcy. Thereafter, appellant trustee was appointed.

On September 14, 1971, the district court entered a memorandum opinion and order in the rescission action, determining that the claims of Siegel and Luedeka "are the ranking claims against the estate in receivership and that this Court has an obligation to see to it that the claimants are paid their just demands," and that "the services of these claimants to the receivership will be allowed as a preferred claim in the administration of the bankrupt property and the distribution of its proceeds to the extent that such services benefited the estate." He referred the claims "specially" to the bankruptcy referee for further determination.

Appellant trustee urged before the referee the following five objections to the claims of Luedeka and Siegel:

(1) The bankrupt is not indebted to claimants in that the order entered in Civil Action No. 2459 insofar as it appointed Rex Marsh receiver of Armstrong Glass Company, Inc., and authorized him to employ agents, employees and attorneys deemed by him necessary or desirable for the continued operation of the business of Armstrong Glass Company, Inc., was *coram non judice* and void as against the bankrupt because by the same order entered appointing Rex Marsh receiver it was adjudged by the District Court that as to Armstrong Glass Company, Inc., the action was dismissed.

(2) That the receiver Rex Marsh in Civil Action No. 2459 was without jurisdiction and authority to onerate the bankrupt for any costs and expenses arising out of or resulting from said action subsequent to the entry of the order entered November 18, 1969, because the bankrupt was not a party to said action, either plaintiff or defendant.

(3) The order entered on September 14, 1971, by the District Judge in Civil Action No. 2459 referring the Luedeka and Siegel claims to the referee for determinations is *coram non judice* and void because neither the bankrupt nor trustee was party to the proceedings at the time of the making of said order.

(4) The estate of the bankrupt was not benefitted by the services and disbursements claimed.

(5) There is no warrant by the rules of law or principles of equity or any statute of the United States for priority of the claim as a cost of the bankruptcy proceeding.

However, because of what the referee considered to be the limited "scope of [the district court's] order of reference,"[1] the referee considered only the issue of benefit to the estate and none of the other contentions. On this issue, he found that Siegel performed, at the receiver's request and during the receivership, accounting services including bookkeeping, special cash flow studies, and a year-end audit and prepared tax returns; and he also found, specifically, "that such services benefited the estate and that the amount requested [$5,404.-87] is reasonable." He found that Luedeka's legal services, including the preparation of an appeal and the defense against a cross-appeal in a pending ac-

---

1. The referee stated:

The trustee overlooks the scope of Judge Neese's order of reference dated September 14, 1971. The reference is not for the purpose of determining whether the order appointing Rex D. Marsh as receiver of Armstrong Glass Company, Inc., is void or for the purpose of determining whether the receiver had jurisdiction and authority to onerate Armstrong Glass Company, Inc., for costs and expenses arising out of or resulting from such appointment or for the purpose of determining the validity of the order of reference.

"Court" is defined in Sec. 1(9) of the Bankruptcy Act (11 USC § 1(9) to mean "the judge or the referee of the court of bankruptcy in which the proceedings are pending; . . . . " It is thus clear that in general the function of the bankruptcy court may be fulfilled by either a judge or the referee and even after a general order of refer-

ence has invested the referee with jurisdiction to discharge the statutory duties of the court of bankruptcy in which the case is pending, the judge and the referee have "coordinate powers." Collier on Bankruptcy, 14th Ed., Vol. 1, Sec. 1.09.

*Judge Neese has heretofore determined that the claims of Luedeka and Siegel "are the ranking claims* 1 *against the estate in receivership* [Armstrong Glass Company, Inc.] ; *and, that this Court* [the bankruptcy court] *has a duty to see to it that claimants are paid their just demands." Judge Neese's order of reference to this referee is for the sole purpose of determining "the extent that such services* [Luedka's and Siegel's] *benefitted the estate."* See Judge Neese's Order, September 14, 1971. *Hence my determination will be limited to that issue only.* (emphasis added).

1. Therefore a Sec. 64(a)(1) priority.

tion, before the termination of the receivership "benefitted the estate and that the amount requested [$4,073.97] is reasonable." However, he determined that the fees for legal services after termination of the receivership [$1,528.08] were not "chargeable against the receivership" and not entitled to any special priority. He concluded:

(1) Judge Neese has heretofore determined that the claims of Luedeka and Siegel are the ranking claims against the bankruptcy estate of Armstrong Glass Company, Inc., to the extent that they benefitted the estate. Sec. 64(a)(1), Bankruptcy Act (11 U.S.C. 104(a)(1)).

(2) I find and conclude that the services of Luedeka and Siegel, performed at the request of the receiver, Rex B. Marsh, in Civil Action No. 2459 (Armstrong Glass Company, Inc. v. TTC Industries, Inc.) were beneficial in said receivership in the following amounts: Mr. Luedeka, $4,073.97; Mr. Siegel, $5,404.87.

(3) I find and conclude that the claim of Mr. Luedeka for services performed after the termination of the receivership is a general claim against the estate of the bankrupt in the amount of $1,528.08.

(4) Upon distribution of funds realized from liquidation of the bankrupt's assets, the claims of Luedeka and Siegel will be recognized as indicated herein as priority claims, Sec. 64(a)(1). The balance of Mr. Luedeka's claim is allowed as a general claim.

IT IS SO ORDERED.

ENTER: December 7, 1972.

The trustee petitioned for review of this order and it was affirmed by the district court.

■ Appellant does not contest the referee's findings of fact on the extent to which appellees' services benefited the bankruptcy estate. These findings, adopted by the district court, are not "clearly erroneous." Fed.R.Civ.P. 52(a). Instead, appellant contends: (1) that appellees' claims are invalid because the district court had no authority to appoint a receiver in the rescission action while simultaneously dismissing the corporation from the suit;[2] (2) that the claims, in any event, should not receive any priority under the bankruptcy laws; and (3) that the bankrupt corporation was denied due process of law.

■■ The first contention is based on appellant's argument that under Tennessee law a court may appoint a receiver only when the person in possession of the property is before the court, and for that reason, the district court could not appoint a receiver and simultaneously dismiss the corporation as a party. We are unconvinced by this argument and we have found nothing in Tennessee law suggesting that the appointment of the receiver was improper. In Tennessee, a receiver may be appointed in equity when necessary "for the purpose of preserving the property in controversy, pending the litigation, for the benefit of the successful party." Johnston v. Hanner, 70 Tenn. 8, 11 (1878); Roberson v. Roberson, 71 Tenn. 50, 52 (1879). This was the very reason why the district judge decided to appoint an equity receiver, to preserve the property of the

---

2. This contention rests on the unstated assumption that if the receivership was void, appellees' claims for services that benefited the estate in bankruptcy and that were rendered in good faith could not be asserted against the trustee. Appellant has ignored the possibility that even if the receivership were void, the appellees might nevertheless seek compensation from the estate on the basis of quasi-contractual principles. In fact, there appears to be a split of authority on the question whether services rendered a

void equity receivership in good faith are, like services rendered a valid equity receivership, entitled to preferential treatment in a superseding bankruptcy to the extent that the services benefited the estate. *See generally* Collier On Bankruptcy, 14th Ed., Vol. 3A, ¶ 62.32 [3]. We find it unnecessary to decide this question because we conclude, *infra*, that the district court had authority to appoint the receiver and did not abuse its discretion in making the appointment.

corporation pending the outcome of the action for rescission. And we are not persuaded otherwise by the fact that the district court dismissed the corporation as a party in the rescission action when it appointed the receiver. Before this order was entered the corporation was before the court as a party to the suit; after its entry, all the corporation's shareholders, including the contesting shareholders, remained parties in the pending action. Since the owners of all shares in the corporation were before the court, their property, the corporation, could be placed under a receiver. The Tennessee cases cited by appellant, Mays v. Wherry, 3 Tenn.Ch., Cooper, 34 (1875), and Crosby v. Morristown & C. G. R. Co., 42 S.W. 507 (Tenn.Ch.App. 1897), are distinguishable from this one because here the district court had jurisdiction over the corporation and all of its property when the receiver was appointed.

■ We consider, next, appellant's contention that even if appellees' claims are valid against the bankrupt, they are not entitled to priority. We agree that the services appellees rendered the receivership are not "expenses of administration" within the meaning of Section 64(a)(1), 11 U.S.C. § 104(a)(1), because the expenses were not incurred "subsequent to" formal commencement of the bankruptcy proceedings. See, e. g., Wheeling Electric Co. v. Mead, 177 F.2d 718 (4th Cir. 1949). See generally Collier On Bankruptcy, 14th Ed., Vol. 3A, ¶ 64.102[2]. Nevertheless, it has long been settled that services such as those rendered by appellees before bankruptcy may give rise to a "preferred" claim in the administration of a superseding bankruptcy to the extent that the services benefited the estate. Randolph v. Scruggs, 190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165 (1903). In Chase Bag Co. v. Schouman, 129 F.2d 247 (6th

Cir. 1942), we stated the rule and its rationale in the following manner:

■ The rule stated in Randolph v. Scruggs, supra, to the effect that one contributing to the preservation or benefit of an estate in bankruptcy, by performing services or advancing credits, under certain conditions, in case of an assignment prior to bankruptcy, is to be preferred is well established. This is on the theory that the assignee has preserved the estate and by his action in so doing has incurred obligations which the subsequent trustee in bankruptcy would have had to incur. As pointed out in the Scruggs case, that is the rule in the state courts universally applied on the theory that "beneficial services are allowed for they are to be regarded as deductions from the property which the assignee is required to surrender, and in that way they gain a preference."

And, although Randolph v. Scruggs, supra, concerned services rendered by a general assignee for the benefit of creditors, the rule applies, as well, to expenses incurred by a prior equity receiver and asserted against the estate in a superseding bankruptcy. Chase Bag Co., supra, at 248. See generally Collier On Bankruptcy, 14th Ed., Vol. 3A, ¶ 62.32 [3]. Accordingly, appellees' claims were entitled to a "preferred" status not because of the priority granted by Section 64a(1) to administrative expenses of the bankruptcy but, instead, under the equitable "benefit" doctrine of Randolph v. Scruggs, supra.[3]

There remains to be considered the claimed due process violation. Appellant trustee argues that neither Armstrong, which had been dismissed from the rescission action when the receiver was appointed, nor the trustee had notice and an opportunity to be heard before the district court recited in its memorandum and order of September 14, 1971,

---

3. We are not called upon in this case to decide whether the preferred status arising under the "benefit" doctrine of Randolph v. Scruggs, supra, is superior or is only equivalent to the priority accorded expenses of administration for the superseding bankruptcy under Section 64(a)(1), 11 U.S.C. § 104(a)(1).

that appellees' claims for services rendered the receivership were to be "preferred claims in the administration of the bankrupt property . . . to the extent that such services benefited the estate." He also complains that, although the trustee had a hearing in the bankruptcy court, the referee determined only the factual issue of benefit to the estate and declined to consider appellant's other arguments contesting the validity of the claims and their priority.

Of course, due process requires that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for a hearing appropriate to the nature of the case." Mullane v. Central Hanover Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950) (Jackson, J.). *See also* Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). Here, the September 1971 order and memorandum entered without notice and a hearing for appellant, describes appellees' claims as the "ranking" and "preferred" claims. But, because that order issued from the rescission action, we believe the court was necessarily speaking only as the equity court that appointed the prior receiver and not as a court of bankruptcy, even though it observed that "in this case the equity court and the bankruptcy court . . . are one and the same." The rule is settled that a bankrupt's property rights can be affected only by an order issued from the bankruptcy court. As stated in Taylor v. Sternberg, 293 U.S. 470, 472, 55 S.Ct. 260, 261, 79 L.Ed. 599 (1934), by the Supreme Court:

> Upon adjudication in bankruptcy, all the property of the bankrupt vests in the trustee as of the date of the filing of the petition. Upon such filing, the jurisdiction of the bankruptcy court becomes paramount and exclusive; and thereafter that court's possession and control of the estate cannot be affected by proceedings in other courts, whether state or federal.

Applying these principles, the Court in *Taylor* held that, after the filing of the petition in bankruptcy, a state equity court's "order fixing the compensation of the receiver and his counsel was a nullity because made without jurisdiction, such jurisdiction then having passed to the bankruptcy court." *Taylor, supra* at 473, 55 S.Ct. at 262. Similarly, we do not believe that the district court in its September 1971 order, issued in the rescission action, could establish authoritatively the validity of appellees' claims or their right to a preferred treatment, even though conditional upon the referee's subsequent determination of the extent to which the services may have benefited the estate. Because the order entered in September 1971, had, in our view, no legal effect on the bankrupt's property, we conclude that the lack of notice and hearing for the bankrupt before this order issued was immaterial.

However, there is more substance in appellant's argument that he did not receive a hearing on all the pertinent issues he presented to the referee before the order issued in the bankruptcy court. To be sure, appellant had notice and a hearing, and urged all his arguments before the referee. But, regarding himself bound by the September 1971 order, the referee considered only the issue of benefit. Yet, it does not follow necessarily that the bankrupt's due process rights were violated. Whether due process was afforded here depends on the scope and effect of subsequent proceedings. Here, apart from the factual determination of benefit that was made by the referee, appellant's other contentions required for determination no additional proofs or findings of fact and, on the contrary, raised only issues of law that were considered by the district court on review before it affirmed the order of the referee.[4] The

---

4. In the affirming memorandum and order of June 26, 1973, the court expressly stated that it had "reviewed all the errors alleged" and had found "no error was committed."

record, moreover, does not demonstrate that the bankrupt corporation was prejudiced by the referee's failure to consider these issues in the first instance. Accordingly, we conclude that appellant, under the totality of circumstances, was not denied due process of law.

The judgment is affirmed for the reasons stated herein, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.

Although factual determinations made by the referee are not to be set aside unless "clearly erroneous," Fed.R.Civ.P. 52(a), the district court's review of legal issues is not so circumscribed. The Supreme Court has observed: "[T]he referee is not in any sense a separate court, nor endowed with any independent judicial authority, and is merely an officer of the court of bankruptcy, having no power except as conferred by the order of reference . . . and that his judicial functions, however important, are subject always to the review of the bankruptcy court." Weidhorn v. Levy, 253 U.S. 268, 271, 40 S.Ct. 534, 535, 64 L.Ed. 898 (1920).