In the Matter of SUPREME PLASTICS, INC., Bankrupt.

Morton J. HARRIS, Plaintiff-Appellant,

v.

SUPREME PLASTICS, INC., Defendant-Appellee.

No. 80 C 1801.

United States District Court, N. D. Illinois, E. D.

Dec. 3, 1980.

Richard H. Fimoff, Chicago, Ill., for plaintiff.

Michael L. Ralph, Trustee, Lincolnshire, Ill., for defendant.

## MEMORANDUM

LEIGHTON, District Judge.

In this bankruptcy appeal, a secured creditor of the bankrupt challenges the bankruptcy court's disposition of his priority claims for rental payments advanced to the bankrupt's landlord both prior to the filing of the bankruptcy petition and during the periods of administration by the bankruptcy court receiver and trustee. The cause was submitted to the bankruptcy court; and it is here on a stipulation covering all facts necessary for consideration of the issues presented. The court has heard the parties in oral argument, considered the stipulated facts, briefs, and order of Bankruptcy Judge Fisher, and concludes that his decision must be modified and affirmed.

### I

Several years prior to the filing of the involuntary petition for adjudication of bankruptcy, the bankrupt, Supreme Plastics, Inc., as tenant, entered into a long term lease with LaSalle National Bank, Trustee, as landlord, for a term extending beyond 1977 and a monthly rental of $4,950. The bankrupt then sublet a portion of the premises, reducing its rental obligation to $3,713.21 per month. However, it failed to pay this remaining rental obligation, defaulting under the terms of its lease. The landlord, therefore, instituted an action in the Circuit Court of Lake County, *LaSalle National Bank, as Trustee under Trust Agreement dated November 4, 1970, known as Trust No. 41504, v. Supreme Plastics, Inc.*, Case No. 77 LM 563. On May 13, 1977, that court entered its final order in the case which provided, *inter alia*, for judgment in favor of plaintiff, a writ of restitution, and a stay of the writ for a period of ten months. The landlord did not attempt to modify or terminate the stay, and the writ was never executed.

On August 5, 1977, an involuntary petition for bankruptcy was filed against Supreme Plastics, Inc. The Bankruptcy Judge entered an order on September 1, 1977 adjudicating it a bankrupt and appointing Michael Ralph, defendant-appellee, receiver in bankruptcy. On October 14, 1977, Ralph was appointed the trustee; he continues to act in that capacity. Ralph has never assumed the bankrupt's lease with LaSalle National Bank, either in his capacity as receiver or as trustee.

At all relevant times, the bankrupt's tangible assets have been located at the leased premises. The assets include large plastic injection molding machines, manufacturing equipment, factory machinery, office equipment and furniture. The bankruptcy court held hearings on November 15, 1977 to determine the validity and amount of all lien claims and the assets affected thereby. The court determined that Morton J. Harris, plaintiff-appellant, former corporate secretary of the bankrupt, had a valid lien in the amount of $155,557.12 against five injection molding machines; that three other creditors had valid liens totaling $196,-348.49 against various items; and that three further parties were the owners of various items and entitled to return thereof. The court also ordered a sale procedure requiring receipt of a minimum upset bid on each lot of encumbered assets in the amount of the lien claim as determined.

Pursuant to this order, the trustee held a sale in open court of both the encumbered and unencumbered assets on November 17, 1977. No bids were received in excess of the amount of the lien claims on the encumbered assets. Bids totaling $23,500 were returned on the unencumbered assets, and sales for the amount were confirmed. All assets sold by the trustee were removed from the premises prior to November 30, 1977. The unsold encumbered assets were abandoned by the trustee prior to that date.

During the period from July, 1977 to November, 1977, neither the bankrupt nor the estate made any payments to the landlord for rent or for use and occupancy of the premises. Rather, Morton J. Harris, to protect his substantial interest in the liened property situated on the premises, made monthly rental payments of $3,713.21, totaling $18,566.05 for the five months of July to November, 1977. These payments were made to Hawthorn Realty Group, Inc., agent of LaSalle National Bank. On October 14, 1977, LaSalle National Bank petitioned the bankruptcy court for use and occupancy expense, seeking the reasonable rental value of the premises in the amount of $3,713.21 per month. On February 22, 1978, Morton J. Harris moved to intervene and applied for reimbursement from the estate of the fair and reasonable value for the use and occupancy of the subject premises for the months of July to November, 1977. Effective December 1, 1978, Hawthorn Realty assigned to Harris its interest in any payment due by virtue of the lease or the use and occupancy of the premises, and the landlord agrees that Harris is the real party in interest entitled to any recovery due.

II

Harris presented several alternative arguments in support of his petition for reimbursement before the bankruptcy court. As to payments made after the filing of the involuntary petition, he relied primarily on the landlord's entitlement pursuant to Section 64(a)(1), 11 U.S.C. § 104(a)(1) (1976), to a priority claim for reasonable costs for use and occupancy of the premises. He contended he was entitled to this priority claim by virtue of the assignment or by application of the doctrine of equitable subrogation. In addition, Harris asserted that he was directly entitled to a priority claim under Section 64(a)(1) since the payments were an actual and necessary expense of preserving and administering the estate.

As to the payments made before the filing of the petition, Harris argued that he had a priority claim under general equitable principles allowing for priority treatment of expenses incurred prior to bankruptcy which preserve the assets of the bankrupt for the benefit of the estate as a whole. Finally, Harris suggested that the rent agreed upon in the lease is presumptively the fair and reasonable value of the premises. Ralph, trustee in bankruptcy, argued that Harris had made the payments as a volunteer; that the lease rental value should not be considered the reasonable value of the premises; and that it would not be equitable to reimburse Harris for all of his payments, since he advanced money on his own behalf and since the unencumbered assets of the estate were of minimal value.

The bankruptcy court concluded that the assignment was of no force and effect, since it was executed after the underlying debt had been extinguished. However, the court agreed that Harris was entitled to be subrogated to the landlord's right of compensation, and had not paid as a volunteer. Noting that the right of subrogation is a creation of equity enforced solely to accomplish substantial justice, the court limited Harris' priority claim to the portion of the rental payments which benefited the unencumbered assets of the estate rather than Harris himself. The unencumbered assets were sold for $23,500, whereas Harris' lien was fixed at $155,577.12. Thus the court divided 23,500 by the sum of 23,500 and 155,577.12 (179,077.12), arriving at a figure of approximately 13%, and awarded Harris 13% of his rental payments subsequent to the filing of the petition, or $1,868.12. The court accepted the lease rental value as the reasonable value of the premises.

Harris' other claims were denied. The court concluded that he was not entitled to a priority claim under Section 64(a)(1) for the expenses of preserving the estate subsequent to the filing of the petition because the preservation of the assets was the primary duty of the receiver or trustee. The court also held that Harris was not entitled to priority claims for payments made prior to the filing of the petition since the payments had been made primarily in his own interest. Thus the bankruptcy court granted priority treatment to Harris' claim for post-petition payments under the doctrine of equitable subrogation, but limited the recovery to that portion of the payments ᵇenefiting the unencumbered assets of the estate. Harris appealed the decision to this court.

The issues have been narrowed on appeal. Harris no longer relies on the assignment, and the trustee does not contest that the lease rental value is the reasonable value for use and occupancy of the premises. Appellee also does not dispute the decision of the bankruptcy court that Harris is entitled to be subrogated to the landlord's right to compensation for the trustee's use and occupancy of the premises. Four issues remain.

Harris contends that he acquired, by subrogation, all of the landlord's rights, and so is entitled to the entire post-petition rental payment as a priority claim. He also continues to maintain that his expenses were necessary to preserve the estate, both before and after the petition was filed, and thus are entitled to priority treatment under Section 64(a)(1) and in equity. Finally, he argues that, even if his right to subrogation is limited by his interest in the debtor's property, the bankruptcy court miscalculated the percentage of his claim which should be allowed.

### III

On November 6, 1978, a new Bankruptcy Act was enacted, effective October 1, 1979. Public Law 95–598, Title I, §§ 101 *et seq.*, 11 U.S.C. §§ 101 *et seq.* (1979). The new act repealed the Bankruptcy Act of July 1, 1898, Pub.L. 95–598, Title IV, § 401(a), but provided that a case commenced under the former act, and all matters and proceedings relating to such case, would continue to be governed by the law applicable prior to the new act. Pub.L. 95–598, Title IV, § 403(a). Bankruptcy proceedings in this case were initiated on August 5, 1977. Accordingly, the court will apply the law under the former act; subsequent citations are to sections of the Bankruptcy Act of 1898, as frequently revised and amended.

The scope of review on an appeal to the district court of a bankruptcy court order is set forth in Bankruptcy Rule 810. This court may affirm, modify, reverse or remand, but must accept the bankruptcy court's findings of fact unless clearly erroneous. Conclusions of law and the legal significance accorded the facts do not fall within the clearly erroneous rule; the court must make its own determination concerning legal issues. *Minnick v. LaFayette Loan & Trust Co.*, 392 F.2d 973 (7th Cir.), cert. den. 393 U.S. 875, 89 S.Ct. 170, 21 L.Ed.2d 146 (1968); *Solomon v. Northwestern State Bank*, 327 F.2d 720 (8th Cir. 1964). Since this case is submitted on stipulated facts, the clearly erroneous rule does not

apply. However, equitable determinations and the issuance of equity relief are a matter of discretion. The scope of review if equitable determinations of the bankruptcy court is accordingly limited to whether there was an abuse of discretion. *Time Oil Co. v. Wolverton*, 491 F.2d 361 (9th Cir.), *cert. den.* 417 U.S. 947, 94 S.Ct. 3072, 41 L.Ed.2d 667 (1974).

In bankruptcy proceedings, the court is necessarily confronted with the difficult task of allocating insufficient resources among meritorious claimants. "The broad purpose of the Bankruptcy Act is to bring about an equitable distribution of the bankrupt's estate among creditors holding just demands based upon adequate consideration." *Kothe v. R. C. Taylor Trust*, 280 U.S. 224, 227, 50 S.Ct. 142, 143, 74 L.Ed. 382 (1930); *Standard Oil Co. v. Kurtz*, 330 F.2d 178, 180 (8th Cir. 1964). Within the jurisdiction conferred by the Act, a bankruptcy court is essentially a court of equity, and its proceedings are inherently proceedings in equity. *Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939); *Matter of Amador*, 596 F.2d 428 (10th Cir. 1979); *In re Brooks & Woodington, Inc.*, 505 F.2d 794 (7th Cir. 1974). In exercising its equitable jurisdiction, the bankruptcy court must consider the circumstances surrounding any claim, emphasizing substance over technical considerations and form, to see that injustice or unfairness is not done in administration of the bankrupt estate. *Pepper v. Litton, infra; IIT–Industrial Credit Co. v. Hughes*, 594 F.2d 384, 386 (4th Cir. 1979). However, these equitable powers must be exercised within the jurisdiction and limits established by the bankruptcy court, to further its purpose, and subject to its specific provisions. *In re Columbia Ribbon Co.*, 117 F.2d 999 (3d Cir. 1941); *In re Dade County Dairies, Inc.*, 474 F.Supp. 438 (S.D.Fla.1979).

## IV

The specific provision at issue here is Section 64(a)(1), 11 U.S.C. § 104(a)(1) (1976), which provides that "the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition", shall have priority. Priority is designed to assure payment, where possible, of certain classes of claims by requiring that they be paid first. The provision furthers the goal of equitable distribution of the debtor's assets, in part by providing assurance to trustees and inducements for efficient bankruptcy administration. *See In re John Horne Co.*, 124 F.Supp. 317 (N.D. Ill.1954), *aff'd*, 220 F.2d 33 (7th Cir. 1955); 3A *Collier on Bankruptcy* ¶ 64.02[1] (14th Ed. 1975). One of Harris' claims on appeal is that he is entitled to priority under § 64(a)(1) for his rental payments subsequent to the filing of the petition.

Upon filing of a bankruptcy petition, the receiver or trustee becomes obligated to preserve the assets of the bankrupt, often requiring the use of the bankrupt's premises for storage. The receiver or trustee may assume or reject a bankrupt's lease, and if not specifically adopted, the lease is terminated. In these circumstances, it is well established that the landlord is entitled to a priority claim under Section 64(a)(1) for the reasonable value of the use and occupancy of the premises by the bankrupt's estate, but that he is not entitled to priority treatment of rent claims accruing prior to filing of the petition. *In re J. Bain, Inc.*, 554 F.2d 255 (5th Cir. 1977); *In re Fredrick Meats, Inc.*, 483 F.2d 951 (9th Cir. 1973); *City of Fort Lauderdale v. Freeman*, 217 F.2d 600 (5th Cir. 1954); *In re Chakos*, 24 F.2d 482 (7th Cir. 1928); *In re Universal Medical Services, Inc.*, 357 F.Supp. 1137 (E.D.Penn.1973). *See* 3A *Collier on Bankruptcy* ¶ 64.14[2] (14th Ed. 1975). The costs of use and occupancy of the premises are considered necessary to preserving and administering the estate, and, if incurred by the receiver or trustee, are given priority under Section 64(a)(1).

Harris argues, quite reasonably, that his payments which provided for use and occupancy of the premises should similarly be accorded priority under Section 64(a)(1). Under the doctrine of subrogation, discussed below, he is in part correct.

However, he cannot assert his own direct claim under Section 64(a)(1) because, as stated by the bankruptcy court, "the preservation of assets of the estate subsequent to the filing of the petition is the primary duty of the receiver or trustee, or, if any officer has not yet been appointed, of the Bankrupt himself." The Bankruptcy Act seeks to minimize the costs of administration, which at times have been so extravagant as to be denounced as "crying evils", *Realty Associates Securities Corporation v. O'Connor*, 295 U.S. 295, 299, 55 S.Ct. 663, 664, 79 L.Ed. 1446 (1935), by providing the bankruptcy court and its officers the sole responsibility for administering the estate. Accordingly, absent special circumstances or prior approval by the receiver or trustee, creditors are considered volunteers not entitled to priority treatment under Section 64(a)(1) when acting to preserve or administer the estate subsequent to the filing of the petition. This allows control of administration of the estate to remain where it properly belongs, with the receiver or trustee, and furthers the policy of equal treatment of all creditors. *See In re Joslyn*, 224 F.2d 223 (7th Cir. 1955); *In re Progress Lektro Shave Corporation*, 117 F.2d 602 (2nd Cir. 1941); *In re Siegel*, 252 F. 197 (S.D.N.Y.), *rev'd on other grounds*, 256 F. 226 (2nd Cir. 1918); *In re Ira Haupt & Co.*, 280 F.Supp. 341 (S.D.N.Y.1967), *aff'd* 396 F.2d 444 (2nd Cir. 1968); 3A *Collier on Bankruptcy* ¶ 62.-21, ¶ 62.24 (14th Ed. 1975).

## V

Harris also asserts a priority claim for rental payments made prior to the petition, relying on the equitable benefit doctrine. This claim cannot be made under Section 64(a)(1), which applies only to costs of preserving the estate *subsequent* to the petition. As a result, some courts have held that pre-petition costs cannot be afforded priority treatment. *In re Ford Home Furnishings Co.*, 272 F.Supp. 820 (D.D.C.1967), and cases cited therein. However, the equitable benefit doctrine, originating in *Randolph v. Scruggs*, 190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165 (1903), allows the bankruptcy court to grant "preferred" status to claims

for services rendered by persons other than bankruptcy officers, to the extent that the services benefited the estate, where the person is acting primarily for the benefit of the estate as a whole. *In re Armstrong Glass Co., Inc.*, 502 F.2d 159 (6th Cir. 1974); *In re Andrew Dutton Co.*, 10 F.2d 502 (1st Cir. 1926).

Most courts allowing preferred status under this doctrine are considering the claims of assignees or quasi-assignees, who more likely act for the benefit of the estate as a whole. Creditors, on the other hand, are presumed to act primarily to serve their own interests, and so are not normally considered equitably entitled to priority treatment. *See In re Billelo*, 171 F.Supp. 69 (E.D.N.Y.1959); 3A *Collier on Bankruptcy* ¶ 62.32[2], ¶ 64.102[2] (14th Ed. 1975). The bankruptcy court concluded that Harris made the rental payments primarily in his own interest. Accordingly, Harris is not entitled to preferred treatment of his claims for pre-petition rental payments.

The court notes that the equitable benefit doctrine has been interpreted and applied quite broadly in circumstances where a person has rendered services either before or after filing of the petition, benefiting the estate, but would otherwise go uncompensated. *See, e. g., In re Kosting*, 350 F.Supp. 1071 (D.Conn.1972). However, fundamental bankruptcy principles, allowing the court and its officers to control and minimize costs of administration of the estate, and promoting equal treatment of creditors, properly limit the application of this doctrine. Conflicting equitable considerations, including that Harris was an officer of the bankrupt and was acting primarily to protect his lien interests, also limit application of the doctrine in this case. Nevertheless, Harris' payments, both before and after the filing of the petition, did benefit the estate, and it would be inequitable to deny him any priority treatment for his claims. The bankruptcy court's partial allowance of Harris' claims to subrogation satisfies these concerns.

## VI

■■ Among the oldest of equitable doctrines is the rule of subrogation whereby a party paying another's debt or discharging another's obligation under some compulsion is entitled to exercise the remedies of the original creditor against the debtor. *American Surety Co. v. Bethlehem Nat. Bank*, 314 U.S. 314, 62 S.Ct. 226, 86 L.Ed. 241 (1941); *First Nat. City Bank v. United States*, 548 F.2d 928 (Ct.Cl.1977). The mere stranger or volunteer is not entitled to subrogation; the payment must be made under legal obligation or to protect some right or property. *Aetna Life Ins. Co. v. Town of Middleport*, 124 U.S. 534, 8 S.Ct. 625, 31 L.Ed. 537 (1888); *First National City Bank v. United States, infra; In re Baltimore Pearl Hominy Co.*, 5 F.2d 553 (4th Cir. 1925); *In re Rogers*, 101 F.Supp. 555 (S.D. Cal.1951). The bankruptcy court concluded, and it is undisputed here, that Harris made the rental payments to protect his lien interests in the machinery on the premises, not as a volunteer, and so is entitled to be subrogated to the landlord's priority claim for compensation from the estate for the use and occupancy of the premises. However, the bankruptcy court reduced the extent of the subrogation.

■■■ Harris contends that, as subrogee, he acquires all of the rights of the landlord, and so is entitled to a priority claim for the total expense of use and occupancy. Generally, a subrogee does "stand in the shoes" of the creditor, entitling him to all of the creditor's rights, including priority rights in bankruptcy. *Butler v. Pacific National Insurance Co.*, 375 F.2d 518 (9th Cir. 1967); *Standard Oil Co. v. Kurtz*, 330 F.2d 178 (8th Cir. 1964); *American States Insurance Co. v. Taubman Co.*, 352 F.Supp. 197 (E.D.Mich.1972); *In re Bessemer Materials, Inc.*, 225 F.Supp. 314 (N.D.Ala.1963); *In re Rogers*, 101 F.Supp. 555 (S.D.Cal. 1951). *See Shropshire, Woodliff & Co. v. Bush*, 204 U.S. 186, 27 S.Ct. 178, 51 L.Ed. 436 (1907). However, subrogation is not a legal right, technically enforced; rather, it is a creature of equity, enforced solely for the purpose of accomplishing the ends of substantial justice. *Memphis & L.R.R. Co. v. Dow*, 120 U.S. 287, 7 S.Ct. 482, 30 L.Ed. 595 (1887); *Aetna Life Ins. Co. v. Town of Middleport, infra; Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962).

■ Subrogation is commonly allowed only to the extent necessary to prevent injustice, based on the circumstances of each case, and will not be permitted where it results in unjust enrichment of the subrogee or other inequities. *Travelers Indemnity Co. v. Peacock Construction Co.*, 423 F.2d 1153 (5th Cir. 1970); *Amick v. Columbia Casualty Co.*, 101 F.2d 984 (8th Cir. 1939). This is particularly true in bankruptcy proceedings where other equitable considerations permit the bankruptcy court to reduce compensation, especially when, as here, the reduction is intended to make compensation accurately reflect the benefits conferred on the estate. *In re Ranchero Motor Inn, Inc.*, 527 F.2d 1044 (9th Cir. 1975); 3A *Collier on Bankruptcy* ¶ 62.05[2] (14th Ed. 1975). *See Manufacturers Trust Co. v. Becker*, 338 U.S. 304, 70 S.Ct. 127, 94 L.Ed. 107 (1949); *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

Harris raises several contentions concerning these equitable considerations which resulted in his compensation being limited. Initially, he suggests that it is unreasonable to restrict the extent of his subrogation on the grounds that he was protecting his own interest, since he must be acting in his interests to be entitled to subrogation. While such reduction would be paradoxical if considering only the doctrine of subrogation, it is not unreasonable in bankruptcy proceedings. Harris' compensation is not being limited based only on the doctrine of subrogation, but also under the bankruptcy doctrine that he should only be compensated to the extent that he benefits the estate as a whole. This is not the typical case, such as the payment of wages or taxes for the estate, where the subrogee's payments benefited only the estate as a whole.

■ Harris emphasizes that, as subrogee, he stands in the place of the landlord, and points out that if he had not made the

payments, the landlord would be entitled to full compensation, not some reduced amount. Also, if the estate had made the payments, the trustee could not have recovered partial reimbursement from Harris and the other lienholders. However, Harris was not trustee and his actual relationship to the estate is, of course, very different from the landlord's. He was an officer of the bankrupt, and a lienholder on property in the estate. The paramount consideration in bankruptcy, outweighing and limiting the technical status of Harris as subrogee, is doing substantial justice in equitably distributing the estate. Harris is not in the typical position of the subrogee precisely because he is a creditor acting on his own behalf, without request or authorization by the referee or trustee. Considering the circumstances, the limitation of Harris' recovery to the extent that he benefited the unencumbered assets of the estate was proper.

Examination of the assets of the estate further reveals why the reduction of Harris' recovery was not an abuse of discretion. Most of the assets in the estate were subject to liens. In addition to his lien, three other creditors had valid liens totaling $196,348.49. Various other items in the estate were returned to their owners. The remaining unencumbered assets of the estate were sold for a total of $23,500. He is seeking priority payment of $18,566.05 in rental payments, approximately $14,370 of which were made subsequent to the filing of the petition. If Harris' claim were granted, he would recover nearly 80% of the unencumbered assets, leaving very little for the general creditors. Since he made these payments in his own interest and without authorization, the bankruptcy court treated them as benefiting only Harris and the unencumbered assets of the estate, and reduced priority compensation to the percentage which benefited the unencumbered assets.

Harris objects that the bankruptcy court should have taken into account the benefit to the other encumbered assets. However, a lien is a charge against assets of the estate, dischargeable before administrative expenses or other priority claims. 3A *Collier on Bankruptcy* ¶ 64.02[2] (14th Ed. 1975). It was therefore not an abuse of discretion for the bankruptcy court to conclude that the other encumbered assets should not be taken into account in determining the benefit Harris conferred on the estate, which benefit would be repaid out of unencumbered assets. In addition, it was not an abuse of discretion to calculate the benefit conferred based on the dollar value of the unencumbered assets, rather than the proportionate storage costs, or to accept the lien value as the benefit to Harris, rather than the amount bid on the encumbered property at sale.

There is one additional wrinkle in this case which both the parties and the bankruptcy court have overlooked, and must be corrected. The parties stipulated that the value of Harris' lien was $155,557.12, and the bankruptcy court accepted this figure in its opinion. However, the bankruptcy court's order of November 15, 1977, determining the amount and validity of Harris' lien claim, states that he has a perfected and valid security interest in the amount of $135,724.28. The court also recited that Harris had paid, to preserve and protect his machinery, rent for the months of July through October, totaling $14,852.84, and legal fees and expenses to protect his security rights totaling $5,000. The court thus authorized the sale of the assets for no less than $155,557.12, the sum of these three figures; directed that, if sale was completed, Harris should receive $135,724.28; and reserved for latter determination the question on appeal here—the amount to be allowed Harris as reimbursement.

Of course, including the $14,852.84 figure in the calculations results in penalizing Harris for making the rental payments, a result clearly not intended by the bankruptcy court. The same calculation, correcting for this oversight, divides 23,500 by the sum of 23,500 and 135,724.28 (159,224.28), arriving at a figure of approximately 14%, and awards Harris 14% of $14,370, his rental payments subsequent to the filing of the

petition, or $2,011.80. Harris is thus entitled to a priority claim of $2,011.80, rather than $1,868.12. In all other respects, the reasoning and conclusions of the bankruptcy court were proper and well within its discretion.

Accordingly, the order of the bankruptcy court is modified to provide that the trustee is to reimburse Morton J. Harris to the extent of fourteen percent of the rental payments made by him for the period beginning August 5, 1977 and ending November 30, 1977, or a total of Two Thousand Eleven and 80/100 Dollars ($2,011.80). The order of the bankruptcy court is affirmed in all other respects.