**In re William Richard SPEARS,
Barbara Jane Spears, Debtors.**

No. 1–82–01823.

United States Bankruptcy Court,
E.D. Tennessee.

May 19, 1985.

Harold Fisher of Harrison & Fisher, Manchester, Tenn., for trustee in Bankruptcy, Scott N. Brown, Jr.

Robert G. Russell, Chattanooga, Tenn., for Steve Fults.

RALPH H. KELLEY, Bankruptcy Judge.

Steve Fults filed claim number 15 for $58,000 for the use of a leased combine in harvesting the debtors' crops in the spring and fall of 1983. This was after commencement of the debtors' chapter 11 case and after a trustee had been appointed. Mr. Fults filed the claim as an administrative expense claim which, if allowed, will have priority over other unsecured claims. 11 U.S.C.A. §§ 503(b)(1) & 507.

The trustee objected to allowance of the claim as an administrative expense. The court made oral findings of fact and entered an order sustaining the trustee's objection. The court indicated that on request of a party it would enter a written memorandum. Steve Fults has requested a written memorandum in conjunction with a motion to extend the time for appeal. This written memorandum supplements the court's oral findings.

Steve Fults is the brother-in-law of William Richard (Dick) Spears. When the Spears filed their chapter 11 petition in September, 1982, Mr. Fults had been employed by them in their farming operations for 13 to 15 years. He spent 90% of his working time in the employment of Mr. & Mrs. Spears. He did a little farming on the side.

In October, 1982, Dick Spears was not satisfied with the performance of his two-wheel-drive combines in harvesting on wet ground. Steve Fults went to a local John Deere dealer and leased a four-wheel-drive John Deere combine in his name.

The lease required five payments of about $22,000 each. The first payment was due at the time of leasing and one payment was due each January from 1984 through 1987.

The first lease payment in October, 1982, was made by trading in two combines, an International Harvester and a Massey-Ferguson. The International Harvester combine belonged to Mr. Fults but the Massey-Ferguson combine belonged to the debtors. Mr. Fults and Dick Spears both testified that the debtors' Massey-Ferguson was worn out. Dick Spears said it wasn't worth anything. According to Mr. Fults, Dick Spears traded the debtors' combine in return for Mr. Fults using the leased John Deere to finish the harvest. Mr. Fults estimated the cost of finishing at about $1,200. Mr. Fults also received a $2,000 refund from the John Deere dealer because it valued the trade-in combines at more than the first lease payment of $22,000. The court finds that debtors' property which was traded in had reasonable value.

The debtors did not obtain prior court approval of the trade-in of their combine. See 11 U.S.C.A. § 363(c).

The leased combine was thereafter used almost exclusively for harvesting the Spears' crops. Mr. Fults by comparison did very little farming on his own and did not use the combine in the business of harvesting for hire.

Mr. Fults testified that he paid labor for running the combine but other testimony showed that it was operated mostly by Eddie Spears, the debtors' son and a paid employee. The debtors also furnished the fuel for the combine. The court has no doubt that the combine was bought, placed

on the Spears farm, and used in accordance with the orders of Dick Spears.

The trustee in bankruptcy was appointed in December, 1982—before the harvesting in the spring and fall of 1983 that is the basis of Mr. Fults' claim. Neither Mr. Fults nor Mr. Spears discussed the use of the leased combine with the trustee until the spring harvesting had been done and the fall harvest had begun. Apparently Dick Spears then told the trustee that if Mr. Fults could not get paid from the bankruptcy estate he could let John Deere retake the combine. The trustee never agreed that the estate would be liable to Mr. Fults for the use of the combine.

The alleged agreement between Mr. Fults and Mr. Spears was for $20 per acre for use of the combine. The claim is for harvesting 1,800 acres in the spring of 1983 and 2,000 acres in the fall of 1983. The trustee doubted that this many acres were harvested. At $20 per acre the charge for 3,800 acres would be $76,000. The claim is for only $58,000, apparently because Mr. Spears has already paid some for the use of the combine. The court does not believe the testimony of Mr. Fults and Mr. Spears regarding the alleged agreement.

The proof did not show that $20 per hour would have been an exorbitant charge for use of the combine, though it may have been a little high if the debtors furnished the labor and the fuel.

When the harvesting was done, Mr. Fults was also an employee of the debtors, apparently with the trustee's consent on behalf of the bankruptcy estate. Mr. Fults, however, was obeying the orders of his employer, Dick Spears.

### Discussion

Once a trustee in bankruptcy is appointed in a chapter 11 case, the trustee has the final decision as to what debts the bankruptcy estate will incur either in the ordinary course of business or out of the ordinary course of business. 11 U.S.C.A. §§ 364, 1106 & 1108. The trustee may hire a debtor such as Mr. Spears to be a manager but his authority is not unlimited. He may have the authority to obligate the estate for some expenses incurred in the ordinary course of business. Hiring someone to harvest crops is in the ordinary course of business in the sense that it is regularly done. However, hiring someone to harvest 3,800 acres at $20 per acre for a total debt of $76,000 is not in the ordinary course of business. Mr. Fults and Mr. Spears obviously knew that a trustee had been appointed before the harvesting that gave rise to Mr. Fults' claim. They could not presume that Mr. Spears had full authority to bind the bankruptcy estate to pay a large debt for harvesting the crops, which were property of the bankruptcy estate. Mr. Fults and Mr. Spears should have sought the court's and the trustee's approval of their alleged arrangement as to the use of the combine.

This is especially true since the facts show that the arrangement from the beginning was intended to acquire the use of the combine for the bankruptcy estate at its expense. Mr. Fults said that he wanted a new combine, but he could not justify leasing a machine of this capacity to harvest his own crops, and he did not use it to harvest crops for anybody who would hire him. The combine was leased to harvest the Spears' crops with the understanding that the bankruptcy estate would save Mr. Fults from having to make the lease payments. Mr. Fults apparently lacked the means to make the payments. The court does not doubt that Dick Spears, not Mr. Fults, was the moving party behind Mr. Fults' decision to buy the combine in his name. The combine was used any way Dick Spears wanted it used. For all practical purposes it belonged to Spears.

■ The court concludes that Mr. Fults' claim should not be allowed as a priority claim under § 503(b)(1) because the debt was incurred out of the ordinary course of business and without notice and a hearing and without the court's approval. 11 U.S. C.A. § 364; *In re Supreme Plastics, Inc.,*

8 B.R. 730 (N.D.Ill.1980); *In re Botany Industries, Inc.,* 3 Bankr.Ct.Dec. 1196 (Bankr. E.D.Pa.1977); *In re Bullock.Corporation,* 2 Bankr.Ct.Dec. 286 (Bankr.N.D. Tex.1976). Creditors should have had the opportunity to consider the overall effect of a proposed deal in which the estate would trade in its combine, Mr. Fults would thereby acquire a combine to be used to harvest the estate's crops, and Mr. Fults would have a priority claim for the use of his combine.

■ Mr. Fults' claim should also be subordinated to other administrative expense claims on equitable grounds. Not only were creditors denied notice, Mr. Fults was also an insider with knowledge that a trustee had been appointed before he entered into the alleged agreement with Dick Spears to harvest the crops. Moreover, Mr. Fults doubtlessly leased the combine for the benefit of the Spears in harvesting the crops, but he now seeks payment from the estate of charges that greatly exceed the lease payments. The estate would have been better served in these circumstances to have leased the combine itself with due notice as required by the statutes. The estate would then be liable only for the lease payments. As it turned out, however, Mr. Spears acquired the combine for his use through his brother-in-law, Mr. Fults, and is now attempting to take care of Mr. Fults better than other creditors who extended credit or furnished goods or services during the chapter 11 phase of this case. These circumstances meet the requirements for equitable subordination of Mr. Fults' claim to other administrative expense claims. 11 U.S.C.A. § 510; 3 Collier on Bankruptcy ¶ 510.05 (15th ed. 1984).

The court therefore concludes that Mr. Fults claim should be disallowed as a priority claim and allowed as a general unsecured claim.

This memorandum constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.