**In re CCGK INVESTORS, an Illinois general partnership, Debtor.**

**WEST SUBURBAN BANK OF DARIEN, Appellant,**

**v.**

**CCGK INVESTORS, Appellee.**

**No. 92 C 3664.**

United States District Court, N.D. Illinois, E.D.

Sept. 16, 1992.

Mark F. Kalina, Guerard, Kalina & Musial, Wheaton, Ill., for appellant.

Michael Leonard Gesas, Gesas, Pilati & Gesas, Ltd., Chicago, Ill., for appellee.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This matter comes before the Court on West Suburban Bank of Darien's ("WSB") appeal from the order of the United States Bankruptcy Court of the Northern District of Illinois. The bankruptcy court ruled that WSB is equitably estopped from asserting an Amended and Restated Proof of Claim against CCGK Investors ("Debtor"). After careful consideration, we affirm the lower court's ruling.

### I. Background

In 1985 and 1986, WSB made a series of secured loans to Debtor. In 1987, the Debtor defaulted on one of these loans and the bank foreclosed. In December, the state court entered a Judgment of Foreclosure in the amount of $805,632.18. The case was subsequently converted into a voluntary Chapter 11 case.

On October of 1989, Debtor requested a payoff letter from WSB indicating the amount Debtor owed WSB.[1] At the time WSB drafted the payoff letter, it was aware of a 1987 lawsuit filed against Debt- or by Dr. Samuel Chen ("Chen"). Chen based his suit on piercing the corporate veil between Debtor and associated businesses. On January 22, 1990, the bar date of the original claims period, WSB filed a Proof of Claim consistent with the payoff letter.

After closing the sale of its assets, Debtor presented a Motion for the Approval of the Sale and for Authorization to Pay Certain Secured Creditors and Related Sale Expenses. The motion included the amount owed WSB as calculated based on WSB's payoff letter. Although it was their right, none of the unsecured creditors objected to the motion. Accordingly, WSB received the full amount asserted in its original proof of claim.

The sale of Debtor's assets generated funds above and beyond those required to repay existing claims. Accordingly, on November 15, 1990, Debtor presented a Motion to Reset the Bar Date in order to allow other creditors, some of whom spoke little English, to file claims. While the motion to reset the bar date was pending, WSB filed an Application for Allowance of Attorney's Fees and Costs and Insurance Expenditures totalling over $59,000.00.

The two motions were decided within one week of each other. On December 15, 1990 the bankruptcy court reset the bar date. Four days later, on December 19, the court authorized payment to WSB for its legal costs and insurance expenditures. The day after receiving reimbursement, having previously given no notice to the court or any of the participants in the ongoing bankruptcy proceeding, WSB filed an Amended and Restated Proof of Claim. The Amended Claim was for $589,153.91 and was based on a recovery theory involving piercing the corporate veil between Debtor and associated business entities.

Debtor objected to the Amended Claim, arguing, among other things, that WSB was equitably estopped from asserting further claims against Debtor. Debtor contended that because WSB had been aware

---

1. Debtor referred to that amount when it presented its Application to Sell Assets to the bank- ruptcy court in November of 1989.

of the 1987 complaint against Debtor premised on piercing the corporate veil, they had constructive knowledge of their alter ego claim before the closing of the original bar date. Debtor then provided affidavits from several of its unsecured creditors stating that they had relied on WSB's original proof of claim in not objecting to the sale of Debtor's assets.

WSB, in turn, directed the bankruptcy court's attention to Chen's affidavit, in which he asserted that nothing the bank had done had affected his decision not to object to the sale of Debtor's assets. Additionally, WSB argued that other creditors had not *detrimentally* relied on WSB's earlier claim because there was nothing Debtor could have done other than sell its assets.

The parties agreed to bifurcate the inquiry into WSB's Amended Claim, having the bankruptcy court first address the issue of whether WSB was equitably estopped from asserting its alter ego claim. The parties submitted affidavits, briefed, and orally argued the issue. On April 24, 1992, the bankruptcy court ruled that WSB was equitably estopped from filing its Amended and Restated Proof of Claim.

## II. Standard of Review

■ There is some controversy regarding the procedural posture of this case and, accordingly, the appropriate standard of review. When reviewing bankruptcy court decisions, this Court acts as an appellate court. Bankr.Rule 8013. Accordingly, this Court will review the lower court's findings of fact for clear error and will review de novo the bankruptcy court's conclusions of law. *In re Supreme Plastics, Inc.*, 8 B.R. 730, 734 (N.D.Ill.1980); Bankr.Rule 8013 (bankruptcy court's findings of fact will not be overturned unless clearly erroneous). Additionally, this Court will not disturb an exercise of the bankruptcy court's discretion unless it finds an abuse of that discretion.

WSB argues that because the bankruptcy court considered material outside the pleadings, the lower court proceedings amounted to a summary judgment hearing on Debtor's affirmative defense of equitable estoppel. The lower court's summary judgment ruling, in turn, should be reviewed de novo. Debtor disagrees, arguing that due to the parties' stipulation, the lower court's ruling comes to this Court as a judgment on the pleadings. Moreover, Debtor argues that this is a matter of equity and, accordingly, should be reviewed only for an abuse of discretion. We agree with Debtor that the bankruptcy court's decision should be reviewed for an abuse of discretion.

Bankruptcy proceedings are equity proceedings and bankruptcy courts have broad equitable powers. *See In re Supreme Plastics, Inc.*, 8 B.R. at 734–35; *In re Chicago R.I. & P.R. Co.*, 756 F.2d 517 (7th Cir.1985). Because bankruptcy courts are charged with "doing equity," reviewing courts should grant them appropriate deference. *See In re Unroe*, 937 F.2d 346, 350 (7th Cir.1991) (court reviewed application of equitable doctrine for abuse of discretion); *In re Supreme Plastics*, 8 B.R. at 735 ("equitable determinations and the issuance of equity relief are a matter of discretion."). Moreover, equitable estoppel is an equitable doctrine applied at the discretion of the court. Accordingly, we review the lower court's decision for an abuse of discretion. *See id.* (review of equitable determinations is limited to whether there was an abuse of discretion); *Holstein v. Brill*, 1992 WL 55488 *2 (N.D.Ill.1992).

■ This Court will find an abuse of discretion only if 1) the lower court based its decision on a clearly erroneous conclusion of law, 2) the record contains no evidence on which the bankruptcy judge could have based the decision, or 3) the factual findings are clearly erroneous. *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 563–64 (7th Cir.1984) (after outlining the three factors, the court stated that "if reasonable men could differ as to the propriety of the [bankruptcy] court's action, no abuse of discretion is found."). *See also Holstein*, 1992 WL 55488 at *2, 1992 U.S.Dist. LEXIS at *5–6.

## III. Discussion

■ In its Memorandum Opinion, the bankruptcy court set forth the elements of

equitable estoppel and ruled that the facts of the instant case satisfied those elements. We will go through each of the elements to determine whether the lower court abused its discretion in finding that WSB is equitably estopped from asserting its amended claim.[2]

■ In order to find equitable estoppel, a court must first determine that a party 1) concealed or falsely misrepresented facts, 2) intended or expected that such acts would be relied upon, 3) had actual or constructive knowledge of the true facts, and 4) that an innocent party detrimentally relied upon the misrepresentation. *In re Howard's Appliance Corp.*, 69 B.R. 1015, 1021 (Bankr.E.D.N.Y.1987); *Azar v. U.S. Postal Service*, 777 F.2d 1265, 1268 (7th Cir.1985) (citing *Portmann v. U.S.*, 674 F.2d 1155, 1167 (7th Cir.1982)).

Here, WSB submitted a payoff letter and a proof of claim purporting to outline the amount Debtor owed. It is undisputed that WSB never mentioned to anyone that it had, or might have, an additional alter ego claim against Debtor. Accordingly, the bankruptcy court was well within its discretion in finding that WSB concealed or falsely misrepresented the amount it was owed by Debtor when it filed its original proof of claim.

Again relying on undisputed facts, the court did not abuse its discretion in finding that WSB intended or expected others to rely on its representations. On October 13, 1989, the Debtor's attorney sent WSB's attorney a letter requesting the payoff figure so that it could use it in negotiating a sale of Debtor's assets. This letter clearly put WSB on notice that the Debtor, and likely others, would rely on WSB's representations. Moreover, the amount WSB claimed in its original proof of claim was circulated to all creditors, including WSB, as part of Debtor's motion for approval of sale. (Motion for Approval of Sale at 8, ¶ 15). It defies common sense that WSB did not expect others to rely on its proof of claim in deciding whether or not to object

to the motion. Accordingly, the court did not abuse its discretion in finding that WSB *must have* expected others to rely on its payoff figure.

With respect to the third element of equitable estoppel, the bankruptcy court again relied on undisputed facts in concluding that before the original bar date WSB had constructive knowledge that it had, or might have, an alter ego claim against Debtor. WSB admits that it was aware of Chen's 1987 lawsuit based on piercing the corporate veil. (Transcript of Proceedings, November 6, 1991 at 22, lines 15–19). However, WSB argues that it did not know for a certainty that it had an alter ego claim until *after* the bar date, when it deposed So Fei Huang. Without contesting the bank's version of the facts, the lower court expressly found that

"although the Bank may not have had all the information regarding a potential alter ego cause of action against the Debtor because certain depositions and discovery were not fully complete at the time of the sale, it had constructive knowledge of a potential alter ego claim based on the information in its possession regarding the 1987 Chen lawsuit. Armed with the knowledge of a potential claim, the Bank was in a position to at least inform the Debtor that such a claim was possible."

*In re CCGK*, No. 92–3664 at 7 (Bankr. N.D.Ill.1992). In finding constructive knowledge, the bankruptcy court did not dispute WSB's contention that it lacked actual knowledge of an alter ego claim until after the original bar date, but found constructive knowledge under the facts as WSB described them. Because it is axiomatic that a court may find constructive knowledge as a matter of law, and because there was ample evidence here to permit such a finding, the lower court here did not abuse its discretion.

Finally, WSB argues strenuously that the bankruptcy court erred in finding detrimental reliance. WSB argues that material issues of fact existed with respect to reliance, the reasonableness of reliance,

---

**2.** Rather than separately discussing the two issues raised on appeal, this Court addresses them

together in its Discussion.

and detriment. (Appellant's Brief at 7). Additionally, WSB argues that equitable estoppel was inappropriate because as a matter of law there could be no reasonable reliance or detriment. This Court disagrees.

First, there were no genuine issues of material fact regarding reliance, reasonableness, or detriment. In arguing that issues of material fact existed, WSB relies heavily on Chen's affidavit. Chen asserts that he did not rely on anything WSB did or failed to do in deciding not to object to the sale of Debtor's assets. (Chen's Affidavit at 8–9). Claiming that Chen's affidavit contradicts other creditors' affidavits, WSB argues that a material issue of fact remained regarding reliance. (Appellant's Brief at 7).

This argument, however, is not persuasive for the simple reason that Chen's affidavit does not contradict the other affidavits. Assuming Chen's affidavit is true, it only speaks to his own reliance on WSB's representations, not the reliance of other creditors. In short, the affidavits by other unsecured creditors, attesting to their reliance on WSB's claim in deciding not to object to the sale of Debtor's assets, remain unchallenged. Accordingly, no evidentiary hearing was required, and the bankruptcy court was within its discretion in finding reliance.

WSB further argues that even if other creditors did rely on the bank's representations, that reliance was unreasonable. WSB claims that many of the creditors were insiders, the very alter ego enterprises on which the bank bases its amended claim. Accordingly, WSB argues that they had sufficient information to make reliance on the bank's payoff figure and proof of claim unreasonable. However, even taking WSB's characterization of these creditors as true, this assertion does not address the reasonableness of the Illinois Department of Revenue's reliance. Thus, there was no issue of material fact outstanding, and the bankruptcy court did not abuse its discretion in finding reasonable reliance by an innocent party.

Lastly, WSB argues that even if creditors reasonably relied, they suffered no detriment. The bank argues, principally, that because the Debtor had no choice but to sell its assets, the creditors could not have suffered any detriment as a result of their reliance on WSB's payoff figure and original proof of claim. However, even if Debtor believed that it had no choice but to sell its assets, there is no reason to believe that the creditors would have acquiesced had they known that WSB's secured claims would preclude them from any recovery.[3] While WSB argues that the knowledge of WSB's full claims would not have helped Debtor restructure any more successfully, the fact remains that the other creditors were deprived of making an informed decision about whether to object to the sale of Debtor's assets. Accordingly, the lower court did not abuse its discretion in finding detrimental reliance.

### IV. Conclusion

For the foregoing reasons, the ruling of the bankruptcy court is affirmed. It is so ordered.

---

**3.** Nor has WSB created an issue of material fact by means of its unsupported assertions that the creditors had no choice but to go along with the sale of assets.